AMANDA METCALF SBN: 57177
NYANZA SHAW SBN: 191423
LAW OFFICES OF AMANDA METCALF
29 Marin Bay Park Court
San Rafael, California 94901
Telephone (415) 454-0945
Facsimile (415) 454-9145

Attorneys for Plaintiffs
CHRISTINA WINDSOR
And SCOTTLAN WINDSOR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA WINDSOR, SCOTTLAN WINDSOR, through and by his mother and Natural Guardian, Christina Windsor,<br><br>            Plaintiffs,<br>      vs.<br><br>The MARIN COUNTY OFFICE OF EDUCATION; MARY JANE BURKE, in her official capacity as Superintendent of the Marin County Office of Education, only; MARY OTTO, in her individual capacity and in her official capacity as the Credentials Specialist for the Marin County Office of Education; MARIN COUNTY BOARD OF EDUCATION; the SAUSALITO MARIN CITY SCHOOL DISTRICT; the SAUSALITO MARIN CITY SCHOOL DISTRICT BOARD OF TRUSTEES, SHIRLEY THORNTON, STEPHEN FRASER, BRUCE HUFF, RONNIE JONES, as individuals and in their official capacity as Trustees; ROSE ROBERSON, in her individual capacity and in her official capacity as Superintendent of the Sausalito School District, the CALIFORNIA COMMISSION ON TEACHER CREDENTIALING; DOES 1 through 25, inclusive,<br><br>            Defendants. | Case No.  C 07 2897 CMC<br><br>**COMPLAINT FOR DAMAGES** |

Complaint, Windsor v. Marin County
Office of Education, et al

LAW OFFICES OF
**AMANDA METCALF**
SAN RAFAEL, CA.

## JURISDICTION AND VENUE

1. This action alleges unlawful, racially discriminatory acts and practices by defendants against plaintiff, Christina Windsor, on account of her race, African American, that were discovered on or about March 24, 2006; The claims asserted herein on behalf of plaintiff, Scottlan Windsor, a minor, have been tolled on account of said plaintiff's minority. Plaintiffs' claims arise under The Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981, and 42 U.S.C. Section 1983. Jurisdiction is conferred upon this court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Marin County, California which is within this judicial district. Plaintiffs request that the Court exercise its jurisdiction over pendant state causes of action under Title 28 of the United States Code, Section 1367.

## PARTIES

2. Plaintiffs CHRISTINA WINDSOR ("WINDSOR") and SCOTTLAN WINDSOR ("SCOTTLAN") at all times herein mentioned were and are African American citizens of the United States. CHRISTINA WINDSOR is the mother and natural guardian of SCOTTLAN WINDSOR, a minor.

3. Defendant MARIN COUNTY OFFICE OF EDUCATION ("MCOE") is a local education district/agency organized and existing under the laws of the State of California, and MARY JANE BURKE is its chief administrative officer. Defendant MARIN COUNTY BOARD OF EDUCATION ("BOARD") oversees school districts within the County of Marin. Defendant SAUSALITO MARIN CITY SCHOOL DISTRICT ("DISTRICT") is a local education agency organized and operating under the laws of the State of California. Defendant, SAUSALITO MARIN CITY SCHOOL DISTRICT BOARD OF TRUSTEES is the governing body of the Sausalito School District and is organized and operates under the laws of the State of California.

2

1  Defendant CALIFORNIA COMMISSION ON TEACHER CREDENTIALING
2  ("COMMISSION") is a state agency, organized and operating under the laws of the State of
3  California, with authority over all matters related to the credentialing of public school teachers and
4  administrators. Each said defendant is subject to suit within the meaning of 42 U.S.C. §1983 under
5  Monell v. Dept. of Social Services, 436 U.S. 658 (1978).
6
7         4.  Defendant MARY OTTO ("OTTO") is, and at all time mentioned herein, was the
8  Credentials Analyst/Specialist employed by the MCOE and was responsible for registration,
9  application and renewal of the credentials for all public school teachers in Marin County, pursuant
10 to authority delegated by the COMMISSION to the MCOE. Defendant ROSE ROBERSON
11 ("ROBERSON") was at all times mentioned herein, the Superintendent of the defendant
12 DISTRICT and was responsible for supporting, directing, authorizing and requesting the issuance
13 of credentials to WINDSOR required for her employment as Principal of the two public schools in
14 the DISTRICT.  At all time mentioned herein defendants SHIRLEY THORNTON, STEPHEN
15 FRASER, BRUCE HUFF and RONNIE JONES were (TRUSTEES) of the defendant Sausalito
16 Marin City School Board of Trustees.  These defendants are sued herein both in their official
17 capacity and individually as private citizens.  In engaging in the conduct described herein, said
18 defendants acted under the color of law and in the course and scope of their employment.
19
20        5.  Plaintiffs are ignorant of the true names and capacities of defendants DOES 1 through
21 25, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed
22 and believe, and thereon alleges that each defendant so named is responsible in some manner for
23 the injuries and damages suffered by plaintiffs as set forth herein.  Plaintiffs will amend their
24 complaint to state the true names and/or capacities of defendants DOES 1 through 25, inclusive,
25 when they have been ascertained.
26
27        6.  At all times herein mentioned, each and every defendant was the agent or employee of
28

3

their co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization, and approval of their co-defendants.

## STATEMENT OF FACTS

7. On or about May 5, 1999, plaintiff WINDSOR was recruited by the DISTRICT and members of the Board of TRUSTEES who requested that she leave her employment with the Longfellow Elementary School in Waterloo Iowa, where she had served as Principal for the previous four years, and move her family (including her 7-year-old son, SCOTTLAN) to Sausalito, California for the purpose of assuming the position of Principal of the DISTRICT'S two public schools. WINDSOR, who was born and raised in Iowa, had earned a reputation as an outstanding public school administrator who had achieved remarkable success in raising the academic skill and performance levels, particularly, of underachieving poor and ethnic minority students.

8. In the period immediately prior to WINDSOR'S recruitment, the DISTRICT was the subject of an investigation by the Marin County Grand Jury for perpetuating a consistently low level of achievement by African American students (who comprised the majority of students enrolled in the District), for its failure to address the historical gross under-achievement of African American students, and for its failure to implement appropriate policies, procedures, goals or objectives to remedy the district's failure to effectively educate African American children. In 2007, the District again came under grand jury investigation for improper management of public funds, and failure to properly mange the enrollment and education of its majority black and brown student population.

9. WINDSOR was hired by the DISTRICT, on or about May 5, 1999, pursuant to a one year written contract. At the time the DISTRICT issued and entered the contract, on behalf of itself and each and every other named defendant herein, each defendant knew that WINDSOR had been

4

educated, trained and employed in the State of Iowa, did not have a California teaching or administrative credential and that credentials issued by California were required in order for WINDSOR to be lawfully employed as a teacher and principal in a California public school.

10.  WINDSOR did not know (and defendants, and each of them, knew but failed to disclose to her) that there existed between the COMMISSION, MCOE, the BOARD, the TRUSTEES and the DISTRICT an agreement, created for the benefit of the class of persons of which WINDSOR was a member, requiring said defendants to secure temporary credentials for WINDSOR pursuant to her employment with the DISTRICT.

11.  Upon WINDSOR'S employment with the DISTRICT each defendant sued herein assumed the duty and obligation to apply for, seek, request and secure for WINDSOR the temporary (one year, non-renewable) credentials required for her lawful employment in a California public school.

12.  The Sausalito School District is composed of a majority of low-income, African American students, most of whom reside in public housing in Marin City; and far fewer white students, who live in the adjoining prestigious community of Sausalito, whose parents tend to be upper-income, well-educated, professionals.  WINDSOR was recruited and hired because of her background, training, experience and talent for relating to and inspiring academically under-achieving African American and other ethnic minority students, and was mandated to make the changes necessary to improve the performance of these students.

13. ROBERSON and some white TRUSTEES, including Trustees Steve Fraser and Bruce Huff disliked and harbored resentments related to the numerical dominance of African American students in the district and sought by various means (including the arbitrary teacher dismissals and the establishment of a separate Charter school) to keep the majority of African American students separate from white students. Fraser made no secret of his contempt for African American students

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CA.

Complaint, Windsor v. Marin County
Office of Education, et al

1  and their parents and WINDSOR openly objected to the offensive and racially discriminatory
2  attitudes and remarks about African American students and their parents expressed during public
3  meetings, and also objected and refused to support or participate in plans by the DISTRICT,
4  ROBERSON and some white TRUSTEES related to the improper wholesale firing of all teachers
5  in the spring of 2000 and the establishment of a Charter school in the district intended primarily for
6  the benefit of white students.
7      14.  As WINDSOR began to implement these changes, and student performance began to
8  improve, ROBERSON perceived that her position as Superintendent was threatened. ROBERSON,
9  and the TRUSTEES retaliated against WINDSOR by complaining about her "mannerisms,"
10 "speech" and other forms and modes of expression and communication that defendants regarded as
11 being associated with the culture of African Americans.
12     15.  Defendants, and each of them, failed and refused to apply for, seek or otherwise obtain
13 or provide the credentials required for WINDSOR'S lawful employment. With the specific intent
14 of causing WINDSOR to be deprived of the benefit of her employment contract (which had been
15 extended to three years), ROBERSON knowingly and intentionally made false statements of
16 material facts to Trustee Cathomas Starbird, regarding her intention and her efforts to secure
17 credentials for WINDSOR.
18     16.  On one occasion in the months preceding plaintiff's demotion and termination from
19 her employment, the DISTRICT specifically directed Principal WINDSOR to engage in racially
20 discriminatory and illegal conduct. Following a playground prank in which two male
21 kindergarteners allegedly "pants-ed" a female kindergartener, WINDSOR, suspended the two boys
22 for three days in accordance with the DISTRICT'S policies and procedures governing such
23 incidents.  In response to pressure from the demands for harsher punishment from the parents of
24 the little girl (who was white), ROBERSON and the DISTRICT demanded that plaintiff ignore the

6

policies and procedures and meet-out additional punishment to the two little boys (who were African American).

17. At approximately 11 PM on a Saturday night following the incident, ROBERSON, in her capacity as Superintendent of the DISTRICT, telephoned WINDSOR at her home and demanded that she further suspend or expel "those black boys," stating that "the DISTRICT could not afford to lose any more white families." WINDSOR objected to ROBERSON'S comments and refused to impose the additional punishment.

18. In mid July, 2000 WINDSOR was attending an out-of-state conference when she received a message advising that she had to immediately provide evidence of the credentials which defendants knew they had not issued or caused to be issued to her. On or about July 27, 2000, after WINDSOR had served in the capacity of Principal for approximately one year, the DISTRICT, MCOE, TRUSTEES and ROBERSON claimed that they had just discovered that she did not have California credentials, and that she was being demoted from her position as principal. Defendants refused to acknowledge that WINDSOR had been recruited and employed from Iowa with full knowledge that she did not have California credentials; that the provision in her written employment contract where any required credentials were to be specified, was left blank; and, that at the time she was hired WINDSOR had expressed her anticipation that her Iowa credentials would be accepted in California, under rules of reciprocity. Defendants further informed WINDSOR that she was being reclassified to a lower position; that she would have to take the credential examination (CBST) in one week (on August 5, 2000), and that her continued employment was conditioned on her correction of unsubstantiated complaints about her personal mannerisms (such as her "body language" and how she "sat" and "spoke").

7

19. As a person holding credentials from another state, upon her employment by a public school district in California, WINDSOR should have been issued "one year-non-renewable credentials" that allowed her to be lawfully employed for the period that the credentials were in force and, granted her a full year from the date of issuance of the temporary credential to take and pass the state credentials examination (CBST). California Education Code Section 44252(b)(3). Only the employing public school district may make application for the temporary credential. The application must be signed by the Superintendent or her designee.

20. Even in July, 2000, when defendants claimed they "discovered" WINDSOR'S credential status, according to Terri Fesperman, the COMMISSION'S Credential Specialist, the DISTRICT could have applied for and WINDSOR would have been issued temporary credentials that would allowed her to be lawfully employed for the ensuing one year period. As soon as the DISTRICT filed the application, WINDSOR would have been granted a full year in which to take and pass the CBST.

21. Windsor could not prepare for the CBST in one week and due to illness, she was otherwise unable on August 5, 2000 to take the examination. On August 10, 2000, WINDSOR was summarily dismissed from her employment for alleged "insubordination" in failing to take the CBST on August 5, 2000. Because the DISTRICT specifically refused to submit an application for temporary credentials, WINDSOR signed the application in her capacity as Principal and submitted it to the COMMISSION on or about August 10, 2000. Thereafter, the COMMISSION granted the application and issued credentials to WINDSOR. When the DISTRICT learned that the COMMISSION had issued temporary credentials to WINDSOR, it contacted the COMMISSION and demanded that the credentials be withdrawn "because the application had not been authorized or executed by the DISTRICT. The COMMISSION, complied with the DISTRICT'S demand and rescinded the credentials issued to WINDSOR.

22. WINDSOR's state court Petition for Writ of Mandate reinstating her to her position as Principal was denied. WINDSOR's state court action seeking tort damages against the DISTRICT for wrongful discharge in violation of public policy is currently pending in the Marin County Superior Court. In that pending action WINDSOR attempted to secure ROBERSON'S deposition for more than 4 years during which the DISTRICT successfully fended off her efforts to obtain discovery, and before a new judge (assigned to the case after plaintiff's successful challenge of the previously assigned judge for cause) ordered ROBERSON'S deposition to proceed.

23. On or about March 24, 2006 while taking ROBERSON'S deposition, WINDSOR learned of the existence an agreement or agreements between the COMMISSION, MCOE, BOARD, TRUSTEES and the DISTRICT pursuant to which defendants had delegated to MCOE and OTTO, responsibility for securing the temporary credentials required for the lawful employment of the class of persons (out-of-state credentialed teachers/administrators hired by California public school districts) to which WINDSOR belongs. Plaintiffs also learned at that time that defendants had breached, violated and otherwise denied WINDSOR the rights, benefits, privileges and entitlements secured to her as a beneficiary of said agreement(s) on account of her race; and in retaliation for her refusal to condone, yield to, cooperate or participate in defendants' racially discriminatory policies and practices.

24. On or about October 26, 2006 MCOE denied WINDSOR'S properly and timely filed claim based on her discovery of the third-party beneficiary contract disclosed by at ROBERSON'S deposition, and authorized plaintiff to file a civil suit for recovery of damages. As of the time of filing this action, WINDSOR"S timely filed civil action against MCOE is pending in the Marin County Superior Court. That case will be dismissed after the filing of this complaint, so that plaintiff may pursue the relief sought thereunder as a state claim, pendent to the federal claims asserted in this action.

9

## DAMAGES

25. As direct, actual and proximate result of defendants' conduct, plaintiff CHRISTINA WINDSOR was severely and permanently injured in her health and strength, and continues to experience great anxiety, terror, shame and humiliation. Plaintiff was summarily and wrongfully dismissed from her employment in violation of her employment contract, without notice, severance pay or any opportunity to provide for herself and her minor child, Plaintiff, SCOTTLAN WINDSOR. As a further direct and proximate result of defendants' conduct, Plaintiffs were uprooted and evicted from their home in California, lost their family home in Iowa, and were forced to seek temporary shelter and provisions moving from place to place as the good graces of their friends and neighbors would allow. Because of the outrageous and unbelievable conduct of defendants' in arbitrarily and vindictively discharging plaintiff from her position as a public school principal, WINDSOR was unable to secure another position in her field and was forced to accept whatever temporary, part-time employment she could obtain in order to sustain herself and her child; thereby also suffering damage to her reputation and her professional career. As a direct and proximate result of defendants' conduct Plaintiff SCOTTLAN WINDSOR, whose relationship to and dependence upon CHRISTINA WINDSOR was known to defendants, suffered physical illness and extreme mental and emotional distress, anxiety, grief, depression, shame, and humiliation beyond the ability of child of his young age to cope with or endure. Both plaintiffs were required to seek and care and treatment for their mental, physical and emotional injuries caused by defendants' conduct.

26. The conduct of defendants MCOE, BOARD, DISTRICT, TRUSTEES, COMMISSION, ROBERSON and OTTO was reckless and demonstrated complete and utter disregard for Plaintiffs' well-being. Such wanton disregard for Plaintiffs' welfare in the face of the probable grave consequences of their actions justifies the imposition of punitive damages against

each of those defendants.

# FIRST CAUSE OF ACTION

<u>CLAIM FOR VIOLATION OF THE CIVIL RIGHTS ACT OF 1866,
AS AMENDED, 42 U.S.C. SECTION 1981</u>

(Against defendants MCOE, BOARD, DISTRICT, TRUSTEES, COMMISSION, ROBERSON, OTTO and DOES 1 through 25, inclusive)

27. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 26 of this complaint.

28. Defendants did not provide to WINDSOR the same benefits, privileges, terms and conditions in the application, interpretation and enforcement of either 1) the contract/agreement or arrangement for securing temporary credentials, or 2) plaintiff's contract of employment, that were provided to other similarly situated public employees, because of plaintiff's race.

29. Defendants have continued to deny these equal rights to WINDSOR, because of her race, in violation of 42 U.S.C., Section 1981.

30. Defendants MCOE, DISTRICT, TRUSTEES, ROBERSON and OTTO acted with malice, ill will, evil intent and racial animus in their discrimination against plaintiff and in denying plaintiff's civil rights 1) as a third party beneficiary to the contract for granting temporary credentials and 2) in her contractual employment relationship with the DISTRICT. Defendants attempted to impede WINDSOR'S performance after she had been induced to leave her home and her employment in Iowa and relocate her family to Marin County. Defendants sought to interfere with and deprive plaintiff of the benefits of her contract with the DISTRICT with the intent of demoting plaintiff from her position as Principal and thereafter terminating her employment, because of her race.

LAW OFFICES OF
**AMANDA METCALF**
SAN RAFAEL, CA.

Complaint, Windsor v. Marin County
Office of Education, et al

31. As previously alleged, each of the remaining defendants instructed, condoned, ratified, and/or participated in the named defendants' racial discrimination against plaintiff.

32. As a proximate result of the misconduct alleged herein, WINDSOR has suffered and continues to suffer all damages proximately caused by the defendants' misconduct, including, but not limited to, mental and emotional stress and anguish, humiliation, embarrassment, loss of enjoyment of life, loss of employment opportunities, loss of employment benefits and loss of income, in an amount to be proved at trial.

33. As a further proximate result of defendants' racial discrimination against WINDSOR, plaintiff has suffered losses to her business and professional reputation on account of her demotion and discharge from her employment with malice, ill will and evil intent; and on account of the public humiliation associated with the State court action that defendants have forced her to pursue. Because defendants' conduct was intentional and/or was engaged in with malice, and/or reckless indifference to plaintiff's rights, WINDSOR is entitled to an award of punitive damages. <u>Kolstad v. American Dental Association, 119 S.Ct. 2118 (1999</u>.

SECOND CAUSE OF ACTON

CLAIM FOR VIOLATION OF THE CIVIL RIGHTS ACT OF 1866,
AS AMENDED, 42 U.S.C. SECTION 1983

(Against defendants MCOE, BOARD, DISTRICT, TRUSTEES, COMMISSION,
ROBERSON, OTTO and DOES 1 through 25, inclusive)

34. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 33 of this complaint.

35. In doing the acts complained of herein, defendants acted under color of law to deprive WINDSOR of certain constitutionally protected rights, including, but not limited to:

a. The right to freedom of speech and association, as guaranteed by the first Amendment to the United States Constitution; and

b. The right not to be deprived of life, liberty or property without due process of law, as guaranteed by the fifth and fourteenth Amendments to the United States Constitution; and

36. As a proximate result of said deprivations of their constitutional rights plaintiffs suffered damages and injuries as hereinbefore alleged.

THIRD CAUSE OF ACTION
(Negligence)
(Against all named defendants and DOES 1-20)

37. Plaintiff re-alleges and incorporates by reference herein paragraphs 1-36 of this complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

38. At all times herein mentioned, defendants owed to a duty of care, to avoid causing unnecessary physical harm and distress to persons in carrying out their duties.  The conduct of defendants, as set forth herein, did not comply with the standard of care required to be exercised by reasonable public officials and agencies in the discharge of their official duties. Plaintiffs CHRISTINA WINDSOR AND SCOTTLAN WINDSOR were injured as the direct and proximate result of the defendants' alleged herein, in an amount to be proved at trial..

FOURTH CAUSE OF ACTION

(Negligent Selection, Training, Retention,
Supervision, Investigation, and Discipline)
(Against defendants MCOE, DISTRICT, BOARD, TRUSTEES, COMMISSION
and DOES 21-25).

39. Plaintiff realleges and incorporates by reference herein paragraphs 1-38 of this complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegation requesting punitive damages.

40. Each Defendant named in this cause has, and at all times mentioned herein had a mandatory duty of care to properly and adequately select, train, retain, supervise, investigate, and discipline their respective employees, ROBERSON and OTTO, so as to avoid unreasonable risk of harm to others.

41. Each named defendant was informed of the negligent, improper and potentially harmful conduct of its supervisory employees ROBERSON and OTTO and failed to take appropriate and/or adequate measures to prevent the continuation of the improper, wrongful and/or illegal conduct said employees.

42. The defendants named in this cause breached their duty of care owed to plaintiffs and others in that they failed to adequately train defendants ROBERSON and OTTS and other employees in the proper procedures to be employed in carrying out their duties under the Education Code and other provisions of law, policies and procedures related to the processing of employee credential applications and the proper management and supervision of subordinate employees.  This lack of adequate supervision and oversight, and lack of adequate training, permitted and promotes the continuing violation of the civil rights of plaintiff and others who expected competence, fairness, objectivity and lack of bias and prejudice in persons employed in positions of public service.

43. Plaintiffs' suffering, loss and damage are foreseeable and proximate results of the aforementioned failure by defendants.

## FIFTH CAUSE OF ACTION

(Breach of Contract)
(Against defendants MCOE, DISTRICT, BOARD, TRUSTEES, COMMISSION and DOES 21-25).

44. Plaintiffs re-allege and incorporates by reference herein paragraphs 1-43 of this complaint.

45. At the time of plaintiff's hire by the DISTRICT, there existed a contract between MCOE and the DISTRICT, and/or between MCOE, DISTRICT, TRUSTEES, BOARD and COMMISSION, as to which WINDSOR was a third-party beneficiary. Said contract required defendants to make application and process an application for temporary credentials and to award pursuant to said application, temporary credentials to WINDSOR upon her hire by the DISTRICT.

46. Defendants failed to make the required application for WINDSOR, and failed to award WINDSOR the temporary credentials she was needed and was entitled to receive as a public school teacher/principal.

47. As a direct and proximate of defendants' breach of said contract WINDSOR suffered damages including the loss of her employment and other foreseeable and compensable damages in an amount to be proved at trial.

### SIXTH CAUSE OF ACTION

(Negligent/Reckless Infliction of Emotional Distress
(Against defendants MCOE, DISTRICT, BOARD, TRUSTEES, COMMISSION
ROBERSON, OTTO, and DOES 21-25).

48. Plaintiffs re-allege and incorporates by reference herein paragraphs 1-47 of this complaint.

49. In engaging in the conduct complained of herein, defendants breached their duty to refrain from causing injury to SCOTTLAN WINDSOR. As a direct and proximate result of defendants' conduct plaintiff SCOTTLAN WINDSOR suffered physical, mental and emotional injuries as hereinbefore alleged, in an amount to be proved at trial.

### SEVENTH CAUSE OF ACTION

(Claim for Loss of Support and Loss of Consortium)
(Against defendants MCOE, DISTRICT, BOARD, TRUSTEES, COMMISSION
ROBERSON, OTTO, and DOES 21-25).

50. Plaintiffs re-allege and incorporate by reference herein paragraphs 1-49 of this

complaint.

51. As a direct and proximate result of defendants' conduct alleged hereinabove, Plaintiff SCOTTLAN WINDSOR suffered the loss of financial support of his mother, and the loss of her aid, society, care, comfort, compassion and affection. Plaintiff SCOTTLAN WINDSOR suffered damages in an amount to be proved at trial.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, plaintiffs pray for relief as follows:

1. For special damages in an amount to ascertained according to proof;

2. For general damages in the sum of $10,000,000;

3. For punitive damages against the individually named officers in an amount sufficient to make an example of the individual defendants and to deter future misconduct;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

Dated: June 2, 2007                LAW OFFICES OF AMANDA METCALF


*Amanda Metcalf*
Amanda Metcalf
Attorneys for Plaintiffs