AMANDA METCALF, SBN 57177
LAW OFFICES OF AMANDA METCALF
29 Marin Bay Park Court
San Rafael, CA. 94901
Telephone: 415-454-0945
Facsimile:  415-454-9145
Attorneys for Plaintiffs
CHRISTINA WINDSOR, and
SCOTTLAN WINDSOR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA WINDSOR,<br>SCOTTLAN WINDSOR,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Request for Judicial Notice and<br>MARIN COUNTY OFFICE OF<br>EDUCATION, ET AL.,<br><br><br>_____Defendants<br>_____/<br>_____ | **CASE NO.  CV 07 02897 (JSW)**<br><br>**OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>[Memorandum of Points and Authorities in Support, Declaration of A. Metcalf Re: Request for Judicial Notice and [Proposed] Order<br><br>Date:        February 18, 2008<br>Time:        9:30 A.M.<br>Courtroom:  A, Fifteenth Floor<br>Judge:        Hon. Jeffrey S. White |

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 3

I.      INTRODUCTION............................................................................... 3

II.     GROUNDS FOR MOTION TO DISMISS............................................ 5

        A. PLEADING AND MOTION TO DISMISS STANDARDS............. 5

III.  DEFENDANTS' MOTION TO DISMISS ................................................ 6

        A.   DEFENDANTS' CLAIM THAT PLAINTIFF HAS FILED SHAM ......... 6
             COMPLAINTS TO EVADE STATE COURT RULINGS IS FALSE

        B.   FIRST and SECOND CLAIMS FOR RELIEF (42 USC 1981 ................... 7

             and 42 USC 1983)

        1. IMMUNITY ARGUMENT.......................................................... 7

      a. Immunity as to Defendants MCOE, BOARD, DISTRICT and TRUSTEES...... 7

        Tort Actions against the State

      b.  Immunity as to defendants ROBERSON, OTTO and the Individual............... 12

             Trustees Fraser, Huff and Jones

        Tort Actions against State Officials   ............................................... 17

        2. STATUTE OF LIMITATIONS.................................................. 17

        3. DISCRETIONARY IMMUNITY CLAIM…..................................... 19

             (Burke, Roberson, Otto, Trustees)

        4.  SCOTTLAN WINDSOR HAS ALLEGED A CLAIM FOR  ...................... 23
             NEGLIGENT INTENTIONAL/RECKESS INFLICTION OF
             EMOTIONAL DISTRESS

        5.   DEFENDANTS FAIL TO DISTINGUISH BETWEEN THE ROLES AND.. 25
             CAPACITIES OF THE VARIOUS INDIVIDUALS SUED AND
             PARTICULAR THE CLAIMS ASSERTED AGAINST EACH OF THEM

IV.  CONCLUSION.................................................................................26

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiffs Christina Windsor and her minor son SCOTTLAN are the victims of

misconduct, both negligent and intentional, on the part of the public education agencies, their

elected and appointed officials and employees sued as defendants herein.

On or about May 5, 1999, plaintiff Christina Windsor (WINDSOR) was recruited by the

Sausalito/Marin City School District (DISTRICT) and members of the Sausalito/Marin City

School District Board of Trustees (TRUSTEES) who requested that she leave her employment

with the Longfellow Elementary School in Waterloo Iowa, where she had served as Principal for

the previous four years, and move her family (including her then 7-year-old son, SCOTTLAN

Windsor (SCOTTLAN) to Sausalito, California for the purpose of assuming the position of

Principal of the DISTRICT'S two public schools. WINDSOR, who was born and raised in Iowa,

had earned a reputation as an outstanding public school administrator who had achieved

remarkable success in raising the academic skill and performance levels of underachieving poor

and ethnic minority students.

WINDSOR was hired by the DISTRICT, on or about May 5, 1999, pursuant to a one

year written contract. At the time the DISTRICT issued and entered the contract, on behalf of

itself and each and every other named defendant herein, each defendant knew that WINDSOR

had been educated, trained and employed in the State of Iowa, did not have a California teaching

or administrative credential and that temporary credentials issued by California were required in

order for her to be lawfully employed as a teacher and principal in a California public school.

WINDSOR did not know (and defendants, and each of them, knew but failed to disclose to her)

that there existed between the California Commission on Teacher Credentialing

(COMMISSION), the Marin County Office of Education (MCOE), the Marin County Board of

3

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

Education (BOARD), the TRUSTEES and the DISTRICT an agreement, created for the benefit of the class of persons of which WINDSOR was a member, requiring said defendants to secure temporary credentials for WINDSOR pursuant to her employment with the DISTRICT.

Defendants, and each of them, negligently and/or intentionally failed and refused to provide the credentials required for WINDSOR'S lawful employment with the specific intent of causing WINDSOR to be deprived of the benefit of her employment contract (which after her hire had been extended to three years) and causing SCOTTLAN to be deprived of the financial and other support which he was entitled to receive from his mother. During the period of WINDSOR'S employment District Superintendent, Rose Roberson (ROBERSON) knowingly and intentionally made false statements of material facts to various persons regarding her intentions and her efforts to secure credentials for WINDSOR and engaged in other intentional misconduct intended to deprive WINDSOR of her employment and SCOTTLAN of the financial and other support provided by his mother. The conduct of defendants DISTRICT, TRUSTEES, (including the individually named TRUSTEES), and ROBERSON was motivated their desire to punish and as reprisal against WINDSOR for her refusal to participate in or condone the DISTRICT'S racially discriminatory policies and practices. These defendants conspired with the Marin County Office of Education (MCOE) and its employee Mary Otto (OTTO) to deprive WINDSOR of the temporary credentials she required and to cover-up the acts engaged in by the remaining defendants to terminate WINDSOR'S employment.

Within weeks of her unlawful termination by the DISTRICT, WINDSOR took and passed the California credentialing examination and was issued full seven year credentials for both teaching and administration. Because defendants' conduct in refusing to secure temporary credentials for WINDSOR was regarded as so bizarre, she had difficulty securing another educational post, as at first no potential employer was prepared to believe that a school district

4

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

could have engaged in such conduct.  WINDSOR was ultimately hired to serve as the Principal

of a middle school by the San Francisco Unified School District.

## II.  GROUNDS FOR MOTION TO DISMISS

### A. <u>Pleading and Motion to Dismiss Standards</u>

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings setting forth a claim

for relief must include "a short and plain statement of the claim

showing that the pleader is entitled to relief." The essential function of notice pleading 'is to give

the opposing party fair notice of the nature and basis or grounds for a claim,and a general

indication of the type of litigation involved.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal

theory" or "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v.</u>

<u>Pacifica Police Dept</u>., 901 F.2d 696, 699 (9th Cir. 1988).

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

only if it fails to state a claim upon which relief can be granted. The

question presented by a motion to dismiss is not whether the plaintiff will prevail in the action,

but whether the plaintiff is entitled to offer evidence in support of the claim. <u>Scheuer v. Rhodes</u>,

416 U.S. 232, 236 (1974), overruled on other grounds

by <u>Davis v. Scherer</u>, 468 U.S.183, 104 S. Ct. 3012 (1984).

In answering this question, the court must assume that the plaintiffs' allegations are true

and must draw all reasonable inferences in the plaintiff's favor <u>Usher v. City of Los Angeles</u>, 828

F.2d 556, 561 (9th Cir.1987). <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986); see

also <u>Russell v. Landrieu</u>, 621 F.2d 1037, 1039 (9th Cir. 1980) (finding that the complaint must

be read in the light most favorable to the plaintiff). Even if the face of the pleadings suggests that

5

Law Offices of
AMANDA METCALF
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1  the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this

2  stage of the proceedings United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir.

3  1981).

4      If the court decides that the complaint is deficient, it must then decide whether to grant

5  leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to

6  amend even if no request to amend the pleading was made, unless it determines that the pleading

7  could not possibly be cured by the allegation of other facts" Lopez v. Smith, 203 F.3d 1122,

8

9  1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

10      A motion to dismiss is designed to test whether the complaint states any claim upon

11  which relief may be granted.  As a procedural tool it was not intended to and should not be

12  perverted into a mechanism for depriving plaintiffs of their right to present evidence to a court or

13  jury in support of legitimate claims.

14

15  **III.  DEFENDANTS' MOTION TO DISMISS**

16
17  **A.  DEFENDANTS' CLAIM THAT PLAINTIFF HAS FILED SHAM
         COMPLAINTS TO EVADE STATE COURT RULINGS IS FALSE**

18      Defendants falsely assert that plaintiff has filed this and other complaints as a sham to

19  avoid rulings in related state court actions.  For example, defendants claims at page 4, lines 6-22

20  of the Memorandum of Points and Authorities filed in support of their Motion to Dismiss, that in

21  disregard of the Marin Superior Court's ruling on April 2, 2007 [in case No. CV012272] plaintiff

22
23  WINDSOR "walked across the hall of the Marin County Superior Courthouse and filed a

24  separate action [Case No. CV 071483] on April 3, 2007" which was allegedly precluded by the

25  April 2, 2007 ruling.  That defendants' assertion is false and misleading is established by the

26  superior court's tentative ruling dated August 28, 2007(Exhibit___) which rejected defendants

27  acknowledged plaintiff's right to file that action and was adopted without change on August 29,

28

6

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

2007.  The court sustained the demurrer and granted plaintiff leave to amend her complaint, the tentative ruling makes it clear that the court rejected defendant's claim that the compliant was a sham or an attempt to evade the court's April 2. 2007 order in the related case.

**B.  FIRST and SECOND CLAIMS FOR RELIEF (42 USC 1981 and 42 USC 1983)**

**1. Immunity Argument**

These defendants argue that they are immune from suit in federal court based on the prohibitions set forth in the Eleventh Amendment to the US Constitution. It is widely acknowledged that Eleventh Amendment jurisprudence has become over the years esoteric and abstruse and the decisions inconsistent. At the same time, it is a vital element of federal jurisdiction that "go[es] to the very heart of [the] federal system and affect[s] the allocation of power between the United States and the several states." Because of the centrality of the Amendment at the intersection of federal judicial power and the accountability of the States and their officers to federal constitutional standards, it has occasioned considerable dispute within and without the Court. C. Wright, The Law of Federal Courts Sec. 48 at 286 (4th ed. 1983).

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

**a. Immunity as to Defendants MCOE, BOARD, DISTRICT and TRUSTEES**

**Tort Actions against the State**

With respect to governmental entities that derive their authority from the State, but are not the State, the Court closely examines state law to determine what the nature of the entity is, whether it is an arm of the State or whether it is to be treated like a municipal corporation or other political subdivision, which does not have Eleventh Amendment immunity.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).  An arm of the State has immunity: "agencies

7

exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself." Lake County Estates v. Tahoe Regional Planning Agency, (1979) 440 U.S. 391, 400 -01, citing Edelman v. Jordan, 415 U.S. 651 (1974); and Ford Motor Co. v. Department of Treasury, (1945) 323 U.S. 459. However, in each case it must be determined whether (based on criteria set forth in federal case law) the agency or agencies sued are in fact "arms of the state."

In support of their immunity argument, defendants cite Regents of the University of California v. Doe (1997) 519 US 425. In that case, Respondent Doe, a New York citizen, sued the University of California and others, alleging, inter alia, that the University had agreed to employ him at a laboratory it operates pursuant to a contract with the federal Department of Energy, and that it had wrongfully breached its agreement with him upon determining that he could not obtain a required security clearance. The District Court concluded that the Eleventh Amendment barred Doe from maintaining his breach of contract action in federal court. In reversing, the Ninth Circuit held that liability for money judgments is the single most important factor in determining whether an entity is an arm of the State, and gave decisive weight to the terms of the University's agreement with the Energy Department, under which the Department, not the State, is liable for any judgment rendered against the University in its performance of the contract.

The Supreme Court in Regents overruled the Ninth Circuit's decision but left undisturbed its determination that a public entity may be regarded as "an arm of the state" in some circumstances and not others. The opinion states at page, 903:

> "Assuming that in some, but not all, of its functions the University is entitled to Eleventh Amendment immunity, the court addressed the narrow question whether it is an arm of the State when "acting in a managerial capacity" for the Livermore Laboratory. Doe v. Lawrence Livermore National Laboratory, 65 F.3d 771, 774 (1995)"

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

8

1  The Supreme Court referred to the Ninth Circuit's analysis, which concluded that an agency may

2  be acting as an arm of the state in some situations while not in others, without criticism:

3

4  "The court [Ninth Circuit] relied on one case holding that Congress had abrogated the
   University's immunity from suit for patent infringement, *Genentech, Inc.* v. *Eli Lilly &*
   *Co.*, 998 F.2d 931, 940-941 (CA Fed. 1993), cert. denied, 510 U.S. 1140, 127 L. Ed. 2d
5  434, 114 S. Ct. 1126 (1994), and another holding that the University had waived its
   immunity in some cases, *In re Holoholo*, 512 F. Supp. 889, 901-902 (Haw. 1981), for its
6  conclusion that the "University is an enormous entity which functions in various capacities
   and which is not entitled to Eleventh Amendment immunity for all of its functions." *Doe*
7  v. *Lawrence Livermore National Laboratory*, 65 F.3d 771, 775 (1995). We have no
   occasion to consider questions of waiver or abrogation of immunity in this case. Nor is it
8  necessary to decide whether there may be some state instrumentalities that qualify as
   "arms of the State" for some purposes but not others."
9

10  The Supreme Court granted certiorari to consider the question whether the existence of an

11  agreement to indemnify the University regarding any judgment entered against it, deprived the

12  University of Eleventh Amendment immunity against suit in federal court. The opinion makes it

13  clear that the Court did not grant certiorari as to petitioner's alternate argument that, under the

14  circumstances of that case, the University was not an arm of the State. The opinion states at page

15

16  905:

17  "As an alternative ground for affirmance, respondent invites us to reexamine the validity
   of the Ninth Circuit cases holding that the University is an arm of the State. He argues
18  that we should look beyond the potential impact of an adverse judgment on the state
   treasury, and examine the extent to which the elected state government exercises "real,
19  immediate control and oversight" over the University, see Hess, 513 U.S., at 62
   (O'Connor, J., dissenting), as well as the character of the function that gave rise to the
20  litigation. Because the question we granted certiorari to address does not encompass this
   argument, we decline to address it."
21

22  The Regents opinion confirms that in each case where Eleventh Amendment Immunity is

23  raised as a defense the court must determine "the extent to which the elected state government

24  exercises control" over the entity claiming immunity, "as well as the character of the function

25  that gave rise to the litigation." Regents, supra, page, 903. The court made it clear that the

26  University may not be entitled to immunity in every case, but that even as to a state university,

27  the Hess analysis must be applied to determine whether the facts warranted a determination that

28

9

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1  the University was acting as an "arm of the state:"

2      Thus, <u>Regents</u> is no support for defendants' claim in this case that they may not be sued

3  in federal court and that as a matter of law the entity defendants must be dismissed.

4      Defendants also cite <u>Belanger v. Madera Unified School District</u> (9th Cir. 1992) 963

5  F.2d 248. While in that case the Ninth Circuit found that the school district was an "arm of the

6  state" nothing in that case suggests that in every case brought against a California school district

7  in federal court, Eleventh Amendment immunity would apply.  The Belanger opinion prescribes

8  the analysis which must be undertaken by the court in order to determine whether the agency

9  claiming immunity is entitled to it:

> "To determine whether a governmental agency is an arm of the state, the following
> factors must be examined: [1] whether a money judgment would be satisfied out of state
> funds, [2] whether the entity performs central governmental functions, [3] whether the
> entity may sue or be sued, [4] whether the entity has the power to take property in its own
> name or only the name of the state, and [5] the corporate status of the entity. The court
> must examine these factors in light of the way California law treats the governmental
> agency. <u>The first factor is predominant. The most crucial question is whether the named
> defendant has such independent status that a judgment against the defendant would not
> impact the state treasury.</u>" (emphasis supplied.)

17      First, there are no facts alleged in the Complaint or otherwise presented to the court in

18  support of in the Motion to Dismiss filed by defendants which would allow this court to make

19  the analysis required by <u>Belanger</u>.  Second, because the Sausalito/Marin City School District

20  carries millions of dollars of primary and secondary liability insurance coverage, neither the

21  District nor the State would pay any judgment entered in this case.  No determination on a

22  Motion to Dismiss may be made by the court as to the underscored portion of the Belanger

23  opinion cited above, as from the complaint alone or the documents as to which defendants have

24  requested that the court take judicial notice, may it be found that a judgment entered in this case

25  would "impact the state treasury."

> "If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear
> and pay the resulting indebtedness of the enterprise? When the answer is "No" - both

10

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1    legally and practically - then the Eleventh Amendment's core concern is not implicated."
2    Hess v. Port, supra.

3    As concerns this case, the State of California is not required to bear any indebtedness incurred

4    by the Sausalito/Marin City School District as has been demonstrated by the recent filings by

5    California school districts that have declared  bankruptcy, (e.g., 1991 Bankruptcy filed by

6    Richmond Unified School District, 1983 filing by San Jose Unified School District).  In such

7    cases the court may order the State to take over and finance ongoing operations of the District,

8    but no court has a yet declared and the State of California has never assumed liability for any

9    District's indebtedness incurred prior to entry of an order making the State primarily responsible

10   for school district's operations.

11

12        Defendants' own Memorandum of Points and Authorities acknowledges that in Bellanger

13   the court considered whether the school district involved in that case should be regarded as a

14   state agency for the purposes of the Eleventh Amendment, and further acknowledges that in that

15   case, the court "examined the following factors in making its determination: 1) whether a money

16   judgment would be satisfied out of state funds; 2)whether the school district performs 'central

17   governmental functions; 3) whether the school district may sue or be sued; whether the school

18   district has the power to take property in its own name or only in the name of the state; 5) the

19   corporate status of the entity." Defendants' Memorandum, page 7. There are no facts before the

20   court that would permit that kind of analysis in this case.  Defendants' Memorandum also cites

21   Mitchell v. Los Angeles Community College District (9th Cir. 1988) 861 F.2d at p. 254.

22        Similarly, there is no factual evidence before the court from which the court could engage

23   in the Belanger analysis as to any of the remaining defendant entities. defendants have cited no

24   case in which a court has declared that Eleventh Amendment Immunity requires dismissal of

25   plaintiffs' claims against the Sausalito School District Board of Trustees, the Marin County

26   Office of Education, or the Marin County Board of Education.  Defendants rely on Belanger,

27

28

11

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1   which was decided in 1992 and on Mitchell v. Los Angeles Community College District (9th Cir.

2   1988) 861 F.2d 198, decided almost twenty years ago as authority for its implied argument that

3   this court need conduct no independent analysis of the criteria established for determining

4   whether Eleventh Amendment immunity applies to the defendant entities in this case.

5        In the ten years following Belanger and the twenty years since Mitchell was decided,

6   changes in California law (including new legislation) have affected how California public

7   schools are operated, controlled and financed. The increase in the number of public Charter

8   schools (and the resultant contractual and finance and insurance agreements entered into by local

9   school districts), Court rulings which have imposed specific educational and financial obligations

10  on particular school districts (specifically on the Sausalito/Marin City School District), the

11  assumption by the state of obligations previously borne exclusively by local school districts (for

12  example in the area of special education), changes by state policymakers in 2002 and 2003 which

13  school districts acquiring increased financial flexibility and autonomy and other changes,

14  preclude reliance on the holdings in Belanger and Mitchell as the sole basis for determining

15  whether in this case the DISTRICT, MCOE, BOARD AND TRUSTEES, should as a matter of

16  law be accorded immunity as "arms of the state;" and there are no facts before the court on a

17  Motion to Dismiss from an independent analysis and determination might properly be made.

18       Finally, defendants cite a California Court of Appeal case, Kirchmann v. Lake Elsinore

19  Unified School District (2000) 83 Cal.App. 4th 1098.  The court in that case acknowledged at the

20  outset that "The question whether a particular state agency has the same kind of independent

21  status as a county or is instead an arm of the State, and therefore 'one of the United States' within

22  the meaning of the Eleventh Amendment, is a question of federal law." (*Regents of Univ. of Cal.

23  v. Doe*, *supra*, 519 U.S. 425, 429, fn. 5 [117 S. Ct. 900, 904] (hereafter *Doe*).) … "Moreover,

24  whether a state agency enjoys Eleventh Amendment immunity "can be answered only after

12

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

considering the provisions of state law that define the agency's character." (*Doe*, *supra*, 519 U.S. 425, 429, fn. 5 [117 S. Ct. 900, 904].)"  The <u>Kirchmann</u> court pointed out the fact that "A uniform test for defining the class of entities that share in the state's Eleventh Amendment immunity has not yet developed." (*Lynch v. San Francisco Housing Authority*, *supra*, 55 Cal. App. 4th 527, 533.) In general, however, <u>the court must examine "the relationship between the State and the entity in question.</u>" (*Doe*, *supra*, 519 U.S. 425, 429 [117 S. Ct. 900, 904].)

 (emphasis added).

Citing <u>Lynch v. San Francisco Housing Authority</u>, 55 Cal. App. 4th 527, the <u>Kirchmann</u> court reiterated the criteria that federal decisions have found to be relevant in determining whether a state entity should have Eleventh Amendment immunity: …"whether a money judgment against the entity would be satisfied out of state funds; the degree of funding the entity receives from the state; whether the entity has independent authority to raise funds; the extent of state control over the entity's fiscal affairs; whether the entity performs central governmental functions; whether the entity may sue, be sued, and hold property in its own name; the corporate status of the entity under state law; the degree of autonomy enjoyed by the entity; the entity's immunity from state taxation; and the geographic scope of the entity's operation. (*Id,* at pp. 533-534.)"

Defendants' Motion to Dismiss addresses none of these criteria. Moreover, in light of the acknowledgment <u>Kirchmann</u> (as well as the other cases cited by defendants) that "A uniform test for defining the class of entities that share in the state's Eleventh Amendment immunity has not yet developed," and that the factors to be analyzed must be evaluated in each case, its is clear that defendants have failed to establish any basis for dismissing plaintiff's complaint against the defendant public entities based on Eleventh Amendment immunity.

13

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

**b. Immunity as to defendants ROBERSON, OTTO and the Individual Trustees, Thornton, Fraser, Huff and Jones**

**<u>Tort Actions against State Officials</u>**

In <u>Tindal v. Wesley</u>, (1897) 167 U.S. 204, the Court adopted the rule of <u>United States v. Lee</u>, (1883) 106 U.S. 196. a tort suit against federal officials, to permit a tort action against state officials to recover real property held by them and claimed by the State and to obtain damages for the period of withholding. The immunity of a State from suit has long been held not to extend to actions against state officials for damages arising out of willful and negligent disregard of state laws. <u>Johnson v. Lankford</u>, (1918) <u>245 U.S. 541</u> <u>Martin v. Lankford</u>, (1918) <u>245 U.S. 547</u> The reach of the rule is evident in <u>Scheuer v. Rhodes</u>, (1974) <u>416 U.S. 232</u> in which the Court held that plaintiffs were not barred by the Eleventh Amendment or other immunity doctrines from suing the governor and other officials of a State alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials. There was no "executive immunity" from suit, the Court held; rather, the immunity of state officials is qualified and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken.

Defendants ROBERSON, OTTO, THORNTON, FRASER, HUFF AND JONES are sued in both in their official and in their individual capacities. In support of their argument that Section 1983 claims against the individual defendants sued in their official capacity must be dismissed, defendants fail to mention that this result obtains only if the court determines that the defendant public entities are for the purposes of this case, "arms of the state." <u>Will v. Michigan Department of State Police</u> (1989) 491 US 58. Moreover, based on the facts alleged, plaintiffs will be able to prove that the discriminatory conduct engaged in by defendants was not a random act of an

14

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

individual public employee, but rather resulted from an official "policy or custom."

Defendants also argue that Plaintiffs' claims against the ROBERSON, OTTO, THORNTON, FRASER, HUFF and JONE, in their individual capacities should be dismissed because defendants the doctrine of qualified immunity shields these defendants from liability for discretionary functions.  In this case, the conduct engaged in by these defendants was not discretionary. Only defendants DISTRICT and MCOE were authorized to secure temporary credentials for WINDSOR, as she was not permitted to apply for the temporary credentials she was required by law to have.  The conduct of which plaintiffs complain is defendants' failure and refusal to carry out the ministerial function of applying for and causing to be issued to WINDSOR the temporary credentials required for her lawful employment and receipt of salary. These defendants were required by law to ensure that the DISTRICT did not employ or pay teachers or administrators who did not hold California credentials. There was no policy related or discretionary element involved in the individual defendants' failure to perform the ministerial function of submitting the District's application for issuance of temporary credentials to plaintiff. Harlow v. Fitzgerald,(1982) 457 U.S. 800.

Moreover, defendants (after failing to make application for credentials for WINDSOR, thereafter, intentionally and with knowledge that they were violating the law) refused to secure the required credentials. Defendants concocted a scheme in which they maintained that WINDSOR herself was responsible for not securing the required credentials and based on this falsehood conspired to have WINDSOR removed from her position and ultimately deprived of her employment.  Hunter v. Bryant (1991) 502 U.S. 224.

There was no "mistaken judgment" involved here. Under the guidelines set forth in cases cited as in defendants' Memorandum of Points and Authorities, page 9, defendants are not shielded by the doctrine of qualified immunity because 1) the conduct attributed to them (racial

15

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1    discrimination and retaliation) is prohibited by federal law; 2) Plaintiffs' right not to be subjected

2    to such conduct was clearly established at the time of the conduct (defendants had been advised

3    of their obligation to secure credentials for WINDSOR), and 3) defendants' actions were not

4    objectively legally reasonable in light of the legal rules that were clearly established at the time it

5    was taken.  If, for any reason, the court should determine that these facts are not clearly alleged

6    in the complaint, Plaintiffs are entitled to amend to set them forth. Lopez v. Smith, 203 F.3d

7

8    1122, 1130 (9th Cir. 2000).

9

10    Defendants argue at page 11 of their Memorandum that the complaint fails to allege any

11    wrongdoing against defendant OTTO. Contrary to defendants' claim the complaint alleges in the

12    paragraphs identified below that:

13

14    4.  Defendant MARY OTTO ("OTTO") is, and at all time mentioned herein, was the
     Credentials Analyst/Specialist employed by the MCOE and was responsible for
15    registration, application and renewal of the credentials for all public school teachers in
     Marin County, pursuant to authority delegated by the COMMISSION to the MCOE.
16

17    23.  On or about March 24, 2006 while taking ROBERSON'S deposition, WINDSOR
     learned of the existence an agreement or agreements between the COMMISSION,
18    MCOE, BOARD, TRUSTEES and the DISTRICT pursuant to which defendants had
     delegated to MCOE and OTTO, responsibility for securing the temporary credentials
19    required for the lawful employment of the class of persons (out-of-state credentialed
     teachers/administrators hired by California public school districts) to which WINDSOR
20    belongs.  Plaintiffs also learned at that time that defendants had breached, violated and
     otherwise denied WINDSOR the rights, benefits, privileges and entitlements secured to
21    her as a beneficiary of said agreement(s) on account of her race; and in retaliation for her
     refusal to condone, yield to, cooperate or participate in defendants' racially discriminatory
22    policies and practices.

23
     28.  Defendants did not provide to WINDSOR the same benefits, privileges, terms and
24    conditions in the application, interpretation and enforcement of either 1) the
     contract/agreement or arrangement for securing temporary credentials, or 2) plaintiff's
25    contract of employment, that were provided to other similarly situated public employees,
     because of plaintiff's race.
26

27    30.  Defendants MCOE, DISTRICT, TRUSTEES, ROBERSON and OTTO acted with
     malice, ill will, evil intent and racial animus in their discrimination against plaintiff and in
28    denying plaintiff's civil rights 1) as a third party beneficiary to the contract for granting

16

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1
2
3
4

temporary credentials and 2) in her contractual employment relationship with the DISTRICT.   Defendants attempted to impede WINDSOR'S performance after she had been induced to leave her home and her employment in Iowa and relocate her family to Marin County.  Defendants sought to interfere with and deprive plaintiff of the benefits of her contract with the DISTRICT with the intent of demoting plaintiff from her position as Principal and thereafter terminating her employment, because of her race.

5

6

7

8

9

It is clear from the complaint that plaintiffs complain that OTTO failed to discharge her duty as Credentials Specialist for MCOE and that plaintiffs were injured thereby.  If, for any reason, the court should determine that the facts alleged do not clearly state a claim against OTTO, plaintiffs are entitled to amend their complaint. Lopez v. Smith, supra.

10

### 2. STATUTE OF LIMITATIONS

11

12

13

14

15

16

17

18

19

20

21

In arguing that plaintiff's claims are time barred, defendants fail to recognize that the statute of limitations as to the claims asserted by SCOTTLAN do not begin to run until he reaches the age of majority.  Moreover, the applicable statute of limitations period for the claims asserted against MCOE by both WINDSOR is two years, not the one year asserted by defendants. As plaintiffs in this action seek recovery under federal laws (as opposed to the California Tort Claims Act) the time periods prescribed in the California Government Code for prosecution of tort claims do not apply. Further, as to the contract based claims asserted against defendants, the applicable statutory period is four years and commences when plaintiffs learn of the breach.  In this case, plaintiffs did not learn of the contract between the DISTRICT and MCOE until 2006, therefore, as to those claims the statute has not yet expired.

22

23

24

25

26

27

28

Each of the claims and causes of action alleged by plaintiffs in this action is based on defendants' wrongful conduct related to the contract or agreement between the DISTRICT and MCOE, the existence of which plaintiffs did not become aware until 2006. Moreover, WINDSOR did in fact file an administrative claim which was served not only on MCOE, but on the legal representative of the DISTRICT. Based on defendants' claim that they are "arms of the state" the

17

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1  filing of WINDSOR'S tort claim filed in 2006 should be regarded as exhaustion of her

2  administrative remedies as to the allegedly state controlled defendants in this action. Further, the

3  complaint filed by WINDSOR in April, 2007 against MCOE in state court, effectively halted the

4
5  running of the statute of limitations under the California Tort Claims Act.

6      Moreover, no tort claim may be filed against individuals sued in their individual capacity,

7  therefore, there is no requirement of exhaustion of administrative remedies as to plaintiffs'

8  claims against the individual defendants.

9      The California Tort Claims Act Section 910 provides:

10
11         A claim shall be presented by the claimant or by a person
           acting on his or her behalf and shall show all of the following:
           (a) The name and post office address of the claimant.
12         (b) The post office address to which the person presenting the
           claim desires notices to be sent.
13         (c) The date, place and other circumstances of the occurrence or
           transaction which gave rise to the claim asserted.
14          (d) A general description of the indebtedness, obligation, injury,
           damage or loss incurred so far as it may be known at the time of
15

16         presentation of the claim.

17
           (e) The name or names of the public employee or employees causing
18         the injury, damage, or loss, if known.
           (f) The amount claimed if it totals less than ten thousand dollars
19         ($10,000) as of the date of presentation of the claim, including the
           estimated amount of any prospective injury, damage, or loss, insofar
20         as it may be known at the time of the presentation of the claim,
           together with the basis of computation of the amount claimed.  If the
21         amount claimed exceeds ten thousand dollars ($10,000), no dollar
           amount shall be included in the claim.  However, it shall indicate
22         whether  the claim would be a limited civil case.

23      As acknowledged in defendants' Memorandum at page 3, on January 25, 2077,

24
25  CHRISTINA WINDSOR, filed a motion with the Marin County Superior Court to amend her

26  complaint in Case No. CV012272, to add additional parties and allege additional causes of action

27  against the DISTRICT. Attached to that motion was plaintiff's proposed Amended Complaint,

28  and the Declaration of plaintiff's attorney pursuant to California Rule of Court 3.1324, which

18

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

identified as new parties MCOE, ROBERSON, THORNTON, HUFF, FRASER, and JONES. The proposed complaint also identified the DISTRICT as an existing party against whom plaintiff sought to allege causes of action for Breach of Contract, Negligent Hiring, Training, and Supervision; Negligence, Fraud and Deceit, Conspiracy to Defraud, Unfair Competition and Federal Civil Rights Violations. (Exhibit A). The proposed amended complaint and the Declaration of plaintiff's attorney (Exhibit B) states that the basis for the proposed amendments was information learned during discovery, to wit: the disclosure by Superintendent Roberson during her deposition, of the existence of the contract/agreement between the DISTRICT and MCOE. The documents identified above were served on counsel for the DISTRICT and MCOE and were received by the DISTRICT and its Board of TRUSTEES.

Both the proposed amended complaint and Declaration in support thereof included each point of information required by Cal. Govt. Code Section 910. The documents served on and received by the DISTRICT and MCOE, satisfied the requirements of the California Tort Claims Act in all respects. This action was filed in a timely manner, less than six months later, in accordance with the provisions of Cal. Govt. Code Section 945.6.[1]

**3. Discretionary Immunity Claim…(Burke, Roberson, Otto, Trustees)**

---

[1] 945.6. (a) Except as provided in Sections 946.4 and 946.6 and subject to subdivision (b), any suit brought against a public entity on a cause of action for which a claim is required to be presented in
accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division must be commenced: (1) If written notice is given in accordance with Section 913, notlater than six months after the date such notice is personally delivered or deposited in the mail.(2) If written notice is not given in accordance with Section 913, within two years from the accrual of the cause of action. If the period within which the public entity is required to act is extended pursuant to subdivision (b) of Section 912.4, the period of such extension is not part of the time limited for the commencement of the action under this paragraph.

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1   Defendants cite California Gov. Code Sec. 820.2 in support of their argument that because

2   they were public employees, defendants Burke, Roberson, Otto and Trustees are granted

3   immunity from suit.  The section of the Government Code relied on by defendants clearly states

4   that such immunity is granted where the act of omission of a public employee was the result of

5   the exercise of discretion vested in the employee.

6   

7   Defendants fail to recognize that not all functions performed by public employees are

8   discretionary. The test for discretionary immunity is whether the governmental actor's action is a

9   *planning decision* as opposed to an operational decision. McQuirk v. Donnelley (9th Cir. 1999)

10  189 F.3d 792.  Among other defenses, the respondent in that case) a law enforcement officer

11  who had made allegedly defamatory comments about plaintiff) argued that his comments were

12  discretionary and that he was, therefore, immune from suit.  The Court of Appeals reversed the

13  District court which had granted summary judgment against plaintiff. The appeals court held:

14  "McQuirk contends that the district court erred in granting summary judgment on this basis

15  because Donnelley's conduct was not discretionary, but rather was ministerial. We agree. The

16  McQuirk court determined that California law applied, stating:

19  
20  The California Supreme Court still applies the analysis it set forth over thirty years ago in
    *Johnson v. California*, 69 Cal. 2d 782, 447 P.2d 352, 73 Cal. Rptr. 240 (Cal. 1968), the
21  first case in which it construed § 820.2. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 897
    P.2d 1320, 1325 (Cal. 1995). In *Johnson*, the court was confronted with the issue of
22  whether a parole officer was immune from liability arising from his failure to warn foster
    parents of the dangerous propensities of a youth placed in their care. *See* 447 P.2d at 354.
23  The court found the parole officer's decision not to warn the foster parents to be
    ministerial and therefore concluded that there was no immunity. *See id.* at 361-63. In
24  reaching this conclusion, the court rejected a literal interpretation of the term "discretion"
    in § 820.2. The California Supreme Court has since remarked, "our opinion [in *Johnson*]
25  reasoned as follows: Almost all acts involve some choice among alternatives, and the
    statutory immunity thus cannot depend upon a literal or semantic parsing of the word
26  'discretion.'" *Caldwell*, 897 P.2d at 1325. Instead, the *Johnson* court distinguished
    between "the 'planning' and 'operational' levels of decision-making." *Johnson*, 447 P.2d at
27  360. Only the former are immune from liability....

28  

20

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

In addition to <u>McQuirk</u>, defendants cite <u>Caldwell v. Montoya</u> (1995) 10 4th 972, and <u>Miller v. Hoagland</u> (1966) 247 Cal.App. 2nd 57.  In Caldwell the court decided that individual members of an elected school board were immune from a suit seeking damages against them personally for their successful votes to terminate the employment of the school district's superintendent because the vote involved the exercise of discretion vested in the individual board members. Similarly, in <u>Hoagland</u>, the court decided that a City Attorney who wrote a letter to a judge which contained alleged misrepresentations and was alleged to have been written with malicious intent, was immune from a suit because the statements contained in the letter were the result of the exercise of discretion vested in him. None of the cases cited by defendants involve facts similar to those in this case.  The actionable wrong alleged on the part of defendants in this case is not the vote to terminate WINDSOR'S employment (although that vote was the result of a fraudulent conspiracy and was motivated by malice).  The individual defendants' vote to terminate WINDSOR'S employment involved defendants' discretion which (though abused) was lawfully vested in them as Trustees of the DISTRICT.  Rather, plaintiffs complain of defendants failure/refusal to carry out their ministerial duty to fill out and submit forms for the issuance of credentials to WINDSOR…a function they were  lawfully obliged to perform in order to have their employment and payment of salary to WINDSOR conform to California law.[2]

The function of completing the paperwork required to make lawful the employment of a person whom the DISTRICT had hired to teach in a public school was clearly a ministerial duty

---

[2] California requires that only credentialed teachers/administrators be employed in the public schools and further requires that a school district which allows public funds to be disbursed as salary to a person who is required to be but is not credentialed, is subject to the imposition of fines and penalties being by the State. California law clearly prescribes the procedure for an employing school district to apply for and have issued to a new hire from out-of-state, a one-year non-renewable credential which allows such person to be employed by the school district while she/he prepares for and takes the California credentialing examination. See California Education Code Sec. 44252(b)(3).

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

Law Offices of
Amanda Metcalf
San Rafale, California

1    as no policy, planning, or other exercises of judgment or discretion was involved. Defendant

2    ROBERSON refused to carry out a clear directive from her superiors (the DISTRICT Board of

3    TRUSTEES) to sign and submit the paperwork required for the State to issue the temporary

4    credentials which the State of California acknowledged she was eligible and entitled to receive.[3]

5    Her refusal was not an act of policy or planning, but the sheer refusal to perform a ministerial

6    duty.

7

8         Similarly, defendant OTTO, the Credentials Specialist employed by MCOE, was

9    responsible for registration, application and renewal of the credentials for all public school

10   teachers in Marin County, pursuant to authority delegated by the COMMISSION to MCOE.

11   Otto failed to ensure that the proper paperwork was submitted for issuance of temporary

12   credentials to WINDSOR.  Her job did not involve policy or planning, rather she was to process

13   and paperwork…a purely ministerial function.

14

15        Defendant BURKE, as County Superintendent is daily engaged in a great many tasks that

16   involve policy making, policy enforcement and planning.  As regards her responsibility to

17   supervise and manage the employees in her office and her responsibility to ensure that the

18   obligations regarding credentialing matters assumed pursuant to the contract/agreement between

19   MCOE and the DISTRICT, however, hers was a purely ministerial function.

20

21        Likewise, the individual TRUSTEE defendants, as elected public officials, were engaged

22   in activities most of which probably involved the exercise of discretion. No exercise of discretion

23   was involved, however, in the individual TRUSSTEE'S failure and refusal to ensure that

24

25

26   _____

27   [3] The State of California in fact issued a temporary credential to WINDSOR after her termination
         but was required to rescind it when the DISTRICT and TRUSTEES complained that the
28       application for the credential (which WINDSOR decided to sign and submit herself) did not
         bear the proper signature.

22

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1   Superintendent ROBERSON performed the task of signing a request for the issuance of

2   temporary credentials as she had been directed to do by the TRUSTEES. Each TRUSTEE owed

3   a fiduciary duty to fulfill their public mandate to supervise and manage the affairs of the

4   DISTRICT by ensuring that employees (such as ROBERSON) carried out the tasks they were

5   directed to perform. The failure of the TRUSTEES to ensure that the DISTRICT operated in

6   compliance with the clear dictates of California law and, specifically, to ensure that an

7   application for temporary credentials for WINDSOR was submitted to the COMMISSION was

8

9   purely ministerial.

10

11      **4. SCOTTLAN WINDSOR HAS ALLEGED A CLAIM FOR NEGLIGENT/
         INTENTIONAL/RECKESS INFLICTION OF EMOTIONAL DISTRESS**

12

13  Defendants have cited cases which appear to deny to a dependant child a claim for injuries

14  sustained as a result of the being wrongfully deprived of his parent's financial and emotional

15  support. However, boorish and discriminatory this result may be, it does not deprive

16  SCOTTLAN of the right to recover for the injuries he sustained as alleged in the Sixth Cause of

17  Action for Negligent/ Reckless Infliction of Emotional Distress.

18      As a direct and proximate result of the injuries sustained by SCOTTLAN'S mother,

19  CHRISTINA WINDSOR (including physical, mental and emotional injuries which required

20  WINDSOR to undergo surgery and seek treatment for other ailments) SCOTTLAN suffered

21  trauma including physical, mental and emotional suffering occasioned by having witnessed the

22  injuries to his mother. SCOTTLAN was present and witnessed his mother's distress, anxiety and

23  suffering during the protracted ordeal pursuant to which defendants concocted a plan to falsely

24  charge his mother for the credential debacle. SCOTTLAN was present and witnessed the trauma

25  of his mother being informed that the Superintendent and DISTRICT and TRUSTEES had

26

27  refused to sign and process the application for her credentials, had concocted a scheme to blame

28

23

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

1   her for the credential fiasco and that the DISTRICT planned to discharge her rather than accept

2   responsibility for its own wrongdoing.

3           As a direct, proximate and foreseeable result of defendants' actions plaintiffs were

4   evicted from their home, lost much of their furnishings and personal belongings, became

5

6   transient, and lost their family home in Iowa. As a further direct and proximate result of

7   witnessing the injuries defendants caused to his mother, SCOTTLAN became physically and

8   emotionally ill and required extended treatment by physicians and psychotherapists. As a still

9   further direct and foreseeable result of defendants actions, because plaintiff  were forced to

10  become homeless, SCOTTLAN was required to leave the his school in the Sausalito/Marin City

11
    School District and consequently suffered educational and academic losses and set-backs as well
12
    as the loss of other benefits associated with being uprooted from his school, teachers, classmates
13
14  and friends.

15          (1) the conduct engaged in by defendants was outrageous;

16          (2)  defendants' intended to cause injury to one or both plaintiffs, or recklessly
    disregarded the probability of causing emotional distress to plaintiffs;
17

18          (3) SCOTTLAN suffered severe or extreme emotional distress; and

19          (4) defendants' outrageous conduct was the actual and proximate cause of the emotional
    distress SCOTTLAN suffered. Alcorn v. Anbro Engineering, Inc, (1970) 2 Cal.3d 493, 497-498.
20

21  SCOTTLAN'S claim satisfies the test set forth in Thing v. La Chusa, (1989) 48 Cal 3d. 644; also
    cited by defendants at page 22 of their brief.  SCOTTLAN:
22

23           1) Is a close relative (child) of the injury victim;

24           2)  Was present at the time the injury producing events occurred and fully understood
                that his mother was being injured…
25

26  (SCOTTLAN was aware of his mother's impaired physical condition and
    observed her suffer physical suffering when she received notice that defendants had falsely
27  accused her of responsibility for the credential debacle and declared that the District would
    not make the required application on her behalf; SCOTTLAN also observed and the
28  exposure of his Mother's dilemma in the press, as well as the public outcry generated in
    his school, church and community at large, and;

                                              24

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

3)   Suffered serious emotional  distress—a reaction beyond that which would be anticipated in a disinterested witness and which was not an abnormal response to the circumstances (including nightmares, fear, anxiety, headaches, crying, refusal to eat, depression, etc.)

Contrary to defendants' argument it was not that moment in time… when any particular defendant arrived at the decision to fail or refuse to carry out his ministerial duties (respecting WINDSOR'S credential application)… that is important for purposes of evaluating the viability of SCOTTLAN'S claim. Rather, the "event" that gives rise to SCOTTLAN'S claim for emotional injury was the trauma of "witnessing" his mother's receipt of the devastating news of defendants' conduct. The malicious act of releasing the parking break of a vehicle parked on a hill is the "cause" of injury sustained by a person who is hit by the runaway vehicle. Should a close relative of the person injured be traumatized by observing the impact, he would be entitled to sue for damages.  By analogy, defendants' failure/refusal to perform the ministerial duty owed to WINDSOR was like the tortfeasor releasing the handbrake. SCOTTLAN was present, observed, and was traumatized by witnessing the injury sustained by his mother when she received the physically and emotionally wrenching "impact"…the news of defendants' malfeasance. SCOTTLAN'S claim is based on the injury he sustained at that moment and the consequences that flowed thereafter from the events set in motion by defendants' outrageous conduct.    Based on these underlying facts, SCOTTLAN has stated a claim for relief, however, should he court, for any reason decide that the facts plead are insufficient to state a claim for relief, SCOTTLAN must be allowed to amend his complaint.

**5.   DEFENDANTS FAIL TO DISTINGUISH BETWEEN THE ROLES AND CAPACITIES OF THE VARIOUS INDIVIDUALS SUED AND PARTICULAR THE CLAIMS ASSERTED AGAINST EACH OF THEM**

The arguments advanced by defendants regarding the claims asserted by plaintiffs in Causes of Action Three through Six are essentially the same…that the claims are 1) time barred

25

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss

because plaintiff was discharged more than 2/4 years ago, 2) that the claims are barred for failure

to file a Tort Claim, and 3) that all the individual defendants enjoy discretionary immunity.

By making such sweeping generalizations defendants have failed to recognize that the

roles, functions and bases for liability is not the same for every defendant.  As a result defendants

have omitted any detailed analysis of the duties, acts and responsibilities of the seven individual

defendants, six of whom are sued in both their official and individual capacities. Defendants'

unexamined conclusion that all defendants are immune from suit because they all engaged in

discretionary acts is not sufficient to warrant this court's finding of any deficiency in the

complaint. Defendants have failed to meet their burden of establishing ground for granting their

motion as to any but plaintiffs' Seventh Cause of Action and for that reason their Motion to

Dismiss as to all but the Seventh Cause of Action should be denied.

## IV.  CONCLUSION

The only proper inquiry for the court on a motion to dismiss is whether the allegations of

the complaint entitle plaintiff(s) to proceed to develop and present evidence in support of their

claims.  With the exception acknowledged above, defendants have failed to establish any

grounds for dismissal of plaintiffs' complaint.  For the foregoing reasons plaintiffs respectfully

submit that The Motion to Dismiss be denied.

Dated: November 13, 2007          LAW OFFICES OF AMANDA METCALF


_____*Amanda Metcalf*_____
Amanda Metcalf
Attorneys for Plaintiffs CHRISTINA WINDSOR
And SCOTTLAN WINDSOR

Windsor v. Marin County Office of Ed., et al Case No.
CV 0702897(JSW), Opp to Mot. Dismiss
Opposition to Motion to Dismiss