1  Amanda Metcalf  SBN 57177
   Nyanza Shaw, SBN 191423
2  Law Offices of Amanda Metcalf
   29 Marin Bay Park Court
3  San Rafael, CA. 94901
   Tel: 415-454-0945
4  Fax: 415-454-9145

5

6  Attorneys for Plaintiff
   CHRISTINA WINDSOR

7

8                    SUPERIOR COURT OF CALIFORNIA

9                         COUNTY OF MARIN

10

11 CHRISTINA WINDSOR,                    CASE NO.  CV012272

12                                       **SECOND AMENDED**
                 Plaintiff,              **COMPLAINT FOR DAMAGES**
13 v.

14 MARIN CITY/SAUSALITO SCHOOL
   DISTRICT, MARIN COUNTY OFFICE
15 OF EDUCATION, ROSE ROBERSON,
   SHIRLEY THORNTON, BRUCE HUFF,
16 STEVE FRASER, RONNIE JONES,
   And DOES 1-20,
17
18              Defendants.
19 _____/

20 Plaintiff, Christina Windsor, alleges as follows:

21                        **PARTIES**

22      1.    Plaintiff, Christina Windsor (Plaintiff), is and at all relevant times mentioned

23 herein was, a resident of the State of California, County of Marin, and was formerly employed

24 by the Marin City/Sausalito School Distinct.

25      2.    Defendant Marin City/Sausalito School District (District) is a California public

26 school district located in Marin County California.   Defendant Rose Marie Roberson

27 (Roberson) was at all relevant times mentioned herein the Superintendent of that District and a

28

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

                                    EXHIBIT  A-3

1 resident of Marin County, California. Defendants Shirley Thornton, Bruce Huff, Steve Fraser

2 and Ronnie Jones were members of the Board of Trustees of the Marin City/Sausalito School

3 District at the time of the adverse employment action complained of herein and were and are

4 residents of Marin County, California.

5      3. As required by the California Government, Plaintiff filed a timely claim for

6 damages against the District, which was rejected. A copy of said notice of rejection is on file in

7 this action. Plaintiff was not required to file any claim in order to proceed with her claims

8 against any individual defendant.

9      4. Defendant Marin County Office of Education (MCOE) is a local education agency

10 operating and located in Marin County California. On October 26, 2006, MCOE rejected

11 plaintiff's Tort Claim and advised plaintiff of her right to file a civil action based on her claim

12 (See: Exhibit A).

13      5. Plaintiff is unaware of the true names and identities of defendants sued herein as

14 Does 7-20, and will amend this complaint to allege that information when said names and

15

16 identities are ascertained.

17      6. At all times mentioned herein, each defendant was the agent in fact of each and

18 every other defendant and engaged in particular conduct complained of herein on behalf of

19 herself/himself/itself and on behalf of each and every other defendant. Plaintiff is further

20 informed and believes and thereon alleges that each of the defendants named herein consented

21 to, ratified and authorized the acts of the remaining defendants alleged herein.

22

23      **ALLEGATIONS OF FACT**

24      7. The Marin City/Sausalito School District, of which defendant Roberson was

25 Superintendent during the period 1999-2005, is composed of two societal extremes. The

26 majority of its constituents are poor, uneducated, black families who live in public housing in an

27 area known as Marin City. The remaining families are primarily well educated, upper-middle

28

2

LAW OFFICES OF
AMANDA METCALF
SAN RAFAELE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT A-3

class whites who live in posh homes in Sausalito.  The Sausalito/Marin City School District is marked by devastating academic underachievement by the bulk of its black student population. Historically, the District's black students attended one school, while its white students attended the other of the District's two schools.  The elected representatives of the School District's Board of Trustees reflected, in part, the real or perceived racial dichotomy between advancing the interests of underachieving black students and preserving and protecting the perceived interests of white students in the District.

8.    The August, 1997 report of the Marin County Grand Jury's investigation of the District described the children enrolled in the District as being in "urgent need of help." The report focused on how poorly the District was run and made recommendations for changes in policies and procedures for improvement.  Among those recommendations (which were made prior to the plaintiff's hire) made by the grand jury were recommendations that the District evaluate its policies and procedures related to curriculum and credentialing and adopt and implement responsible measures for improving the curriculum and ensuring that teachers and other personnel were properly credentialed.

9.    As a part of the mandate to better serve the District's large population of underachieving students, the District's governing board of trustees commenced a nationwide search for a new principal who was qualified to tackle the District's unique problems. As a part of that search, the District's governing board recruited Plaintiff from Iowa.

10.    Plaintiff was regarded as one of the most successful school principals in Iowa and had been acknowledged as responsible for significantly raising the achievement levels of disadvantaged students. For these reasons plaintiff was enthusiastically recruited by members of the Sausalito School District Board of Trustees.  Plaintiff was hired by the District on July 6, 1999 to serve as principal of its two schools. Plaintiff quickly won the cooperation, respect and

3

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

support of the vast majority of teachers, parents and students in the District and began to design and implement changes that had a major, positive impact on the quality of education in the District.

11.    Defendant, Rose Roberson was hired as Superintendent by the defendant District with few qualifications and little experience for the position. Roberson failed to prove effective in managing the District and was ultimately discharged.  Prior to plaintiff's hire, it had become apparent that Roberson was not competent to perform the demanding job of managing the troubled District, and Board members believed that Christina Windsor, on account of her background, experience and accomplishments, could make the District's programs successful despite Roberson's shortcomings.

12.    Plaintiff is informed and believes and thereon alleges that Defendant Roberson feared that ultimately she would be replaced by the more experienced, capable and successful Christina Windsor.  Prior to plaintiff's hire plaintiff stayed at defendant Roberson's home and the parties discussed plaintiff's background, experience and accolades plaintiff had received. Prior to plaintiff's hire Roberson had actively been engaged in the recruitment and hiring of other employees who were required to have California credentials and Roberson should have been and was familiar with the process required to be followed by the District in securing credentials for temporary employees.  Roberson did not genuinely support plaintiff's hire and engaged in conduct designed and intended to deprive or deny plaintiff the entitlements of her employment, including but not limited to plaintiff's retention of her position. Roberson was supported in her opposition to plaintiff by Board members Frazier and Huff and later other board members who realized that the Board had committed errors and omissions and engaged in prohibited conduct that could subject the Board to liability. The prohibited conduct engaged in by Roberson and Board members who opposed Windsor included but was not limited to

4

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

1   Roberson's refusal of specific directives from particular Board members (including Starbird and

2   Johnson) to take the steps necessary to ensure that the District secured temporary credentials for

3   plaintiff, and Roberson's false representation to Board members that she had complied with their

4   instructions and requests.

5       13.    The California Education Code authorizes the California Commission on Teacher

6   Credentialing, upon receipt of an "Employment Statement For The One-Year Nonrenewable

7   Credential" (Form CL-672, Exhibit B) signed by the Superintendent of a school district, to issue

8   a temporary California credential(s) that allows the district to employ an out-of-state

9   teachers/administrator while the employee prepares for, takes and passes the California

10   credential exam (California Basic Skills Test...CBST).  Only the employing school district, not

11   the employee, may apply for this credential which is valid for one year.

12      14.    The District knew when it recruited and hired plaintiff that she was living,

13   working and credentialed in the State of Iowa and had never lived or worked or been

14   credentialed in California.  The District (specifically the Superintendent and the trustees) knew

15   that the only way for plaintiff or any teacher hired from out-of-state to be legally employed by a

16   California school district was for the District to request the issuance of  the temporary One Year

17   Nonrenewable Credential for the out-of-state employee.  In view of this fact, the Board of

18   Trustees of the District specifically directed defendant Roberson to secure temporary credentials

19   (teacher and administrative) for plaintiff who was required to assume her duties as

20   principal/teacher immediately after she was hired in July, 1999.   Roberson failed, and (later after

21   receiving a further specific directive) refused to request the temporary credentials for plaintiff.

22      15.    Plaintiff performed her job as principal of the Marin City/Sausalito Schools

23   exceedingly well, operating under the assumption that she was covered by rules of reciprocity by

24   which most states allow teachers/administrators already credentialed in one state, to be employed

5

Law Offices of
AMANDA METCALF
San Rafale, California

EXHIBIT  A-3

in another state.  Four months into her one-year employment contract the District's Board of Trustees extended plaintiff's contract for an additional two years (Exhibit D).  Neither plaintiff's original employment contract nor her renewed contract alerted her to any requirement, condition or problem related to her credentials, nor was plaintiff informed that the Superintendent had been directed to secure temporary credentials for her or that the Superintendent had failed and refused to comply with this directive.

16.     Incredulously, the District and Roberson claim that they did not know that plaintiff did not have California credentials until July, 2000, (a full year after plaintiff had been employed as principal) and that the information came to light by happenstance, when the Superintendent decided to personally "check teachers' personnel files" for credential information.  The information for which the Superintendent claims she was searching in July, 2000 had, in fact, already been culled from the files by a staff person and that information (for each teacher, including plaintiff) had been presented to the Superintendent in a printed report/list approximately two months prior.

17.     After the Superintendent's alleged discovery in July, 2000 that plaintiff had been issued no California credentials, plaintiff was directed to visit the Marin County Office of Education to "take care of" the credential matter.  Mary Otto, the credentials specialist for the County expressed surprise that plaintiff had not been issued a temporary credential and gave plaintiff a Form CL-672 (Exhibit B) with instructions to have Superintendent Roberson sign and submit the form, which would resolve the problem.  Plaintiff presented the form to Roberson as instructed, but Roberson refused to sign it.  Thereafter, when the issue was raised at a meeting of the District Board of Trustees, the president of the Board requested that Otto immediately fax a copy of the Form CL-672 to the Board so that it could be presented to the Superintendent for her signature.  When the faxed form was received it was presented to Roberson for her signature but

6

LAW OFFICES OF
AMANDA METCALF
SAN RAFAELE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

she refused to sign it. Due to the dispute presented by the Superintendent's refusal to execute the document that would result in credentials being issued to plaintiff, the Superintendent was accompanied and represented by her own attorney in the several emergency sessions called thereafter to try and find a way out of the dilemma caused by Roberson's refusal to sign the document for plaintiff's credentials and the fact that the District had and was continuing to violate State law by paying salary to a teacher/administrator for whom it had not secured California credentials.

18.    During the months of July, August and September 2000 the District Board of Trustees met in a series of "emergency" closed sessions to discuss and ultimately to cover up the District's failure to secure temporary credentials for then Principal, Christina Windsor and the District's related violation of California law by the illegal salary payments which flowed therefrom. The sessions in question did not concern the performance of Christina Windsor or any other legitimate issue that required or permitted the agency under the Brown Act, to meet in closed session.  Because of the actual purpose and subject of the meetings, plaintiff should have been given the required statutory 24 hours notice of such meetings and an opportunity to request that they be conducted in public.  She was not given such notice, and despite her written requests that the Board conduct all meetings concerning the issue of her credentials and her employment, in public, the District/Board refused to do so. Defendants conducted these sessions closed to the public not to protect the privacy of plaintiff, but for the purpose of keeping secret and covering up their failure to make proper application for temporary credentials for the out-of-state person they had hired as principal, and to keep secret the fact that the District and its Superintendent were culpable and perhaps financially liable for not following proper procedures respecting the employment and payment of Christina Windsor.

19.    The defendant District used plaintiff's status as an "employee" and its claim that

7

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

the "emergency" closed sessions were called to discuss "confidential employee matters" as a pretext to close its deliberations to the public, regarding its own omissions, negligence and misconduct. Defendants' plotted and schemed against plaintiff, demoted her from her position as principal and thereafter discharged her from her employment in order to cover-up their conduct which violated California laws, exposed the Board/District to substantial fines and penalties, and would, if made public, subject the individual Board members and the Superintendent to charges of malfeasance in office.

20.    In furtherance of their conspiracy to conceal the illegal conduct alleged hereinabove, the Board/District refused to follow its standard policy of providing counsel to ex Board members and ex-employees who are called to testify regarding District/Board affairs. The District/Board refused to honor former Board member Cathomas Starbird's request that she be provided counsel at her deposition taken in this case. The Board refused to provide Ms. Starbird counsel because she elected to testify truthfully regarding acts of misconduct on the part of the District and Superintendent Roberson. In addition and in furtherance of its scheme to cover-up evidence of misconduct, the District/Board failed and refused to secure separate counsel in this litigation for defendant Roberson, with whom it has a clear conflict. The District/Board has engaged in additional acts in furtherance of their conspiracy to deprive plaintiff of her civil and property rights by improperly claiming that information regarding the alleged "emergency" closed sessions of the Board are protected from disclosure by the Brown Act and, thereby, continuing to wrongfully and illegally violate plaintiff's right to discover, document and present evidence in support of her claims for damages in this action.

## BACKGROUND INFORMATION

21.    Christina Windsor, a black, female, single mother of two adopted sons (one of whom at the time of the events alleged herein was still in elementary school) was born, raised,

8

EXHIBIT  A-3

1   educated and lived in Iowa until she was recruited by the Sausalito School District to serve as

2   principal.  Plaintiff graduated from the University of Northern Iowa with a Bachelor's Degree in

3   Education in 1981, and received her Master's Degree in 1993.  She received both teaching and

4   administrative credentials form the State of Iowa and was employed as a principal by the school

5   district in Waterloo from 1995 until she accepted the position as principal of the defendant

6   school district in 1999.

7

8           22.    Plaintiff initially refused to consider the District's offer of employment because of

9   her mother's poor health.  When her mother died, however, plaintiff agreed to come to California

10   for an interview.  Plaintiff completed a written application in which she clearly stated that she

11   did not have any California credentials. At no time prior to July, 2000 did Defendant Roberson

12   raise any issue regarding the adequacy of plaintiff's Iowa credentials, which plaintiff believed

13   entitled her to reciprocity in California.

14

15           23.    On July 13, 2000, defendant Roberson sent plaintiff a letter demanding that she

16   produce "within 48 hours" copies of California credentials she knew plaintiff did not have. At no

17   time prior to July 13, 2000 did defendant Roberson or anyone on her behalf advise plaintiff (nor

18   did plaintiff know) that she was required to obtain California credentials.

19

20           24.    On July 17, 2000, plaintiff secured and presented to defendant Roberson an

21   application for issuance of California credentials that would have allowed plaintiff to continue

22   working for one year during which time she could study for and take the California credentials

23   examination.  Roberson accepted the application but, without explanation and in violation of her

24   employers directives, refused to sign it.  Instead, on July 27, 2000 Roberson caused plaintiff to

25   be notified that she had been demoted from her position as principal and reassigned as a member

26   of the classified staff.  At Roberson's direction the District demanded that plaintiff take the

27   credential examination (for which most applicants study for six months to a year) in less than a

28

9

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

week (on August 5, 2000).

25.    Plaintiff contacted the California Teacher Credentialing Committee which advised her that the Superintendent should have and still could apply for a one year temporary credential for her, which would allow plaintiff to continue working while she studied for the exam. Plaintiff was told that she could take the exam at any time during the next twelve months, and that she could legally be employed during that time.    On August 5, plaintiff was ill, and notwithstanding her illness, could not have been adequately prepared to take the exam. Plaintiff notified Roberson that she had registered to take the exam on October 7, 2000. On August 10, 2000 the District advised plaintiff that she was terminated effective immediately for "insubordination" for having failed to take the test on August 5. Plaintiff, herself, submitted the application to the credentialing committee which the Superintendent had failed to sign and submit on plaintiff's behalf. On October 7, 2000, plaintiff took and passed the examination and was issued full California credentials.

26.    On or about May 26, 2005, the deposition of former Sausalito School District Board Trustee, Cathomas Starbird was taken by counsel for the Marin City/Sausalito School District. The information revealed by Cathomas Starbird in her deposition (and in a declaration, executed in January, 2005) disclosed to plaintiff for the first time that defendant Roberson had engaged in intentional misconduct regarding plaintiff's that was designed to cause injury to plaintiff. Specifically, information given by former Board member Starbird disclosed that defendant Roberson had been directed by her employer to take all necessary steps to ensure that plaintiff received temporary credentials that would allow her to remain employed in her position as principal; had directed Roberson to communicate with plaintiff regarding her need to obtain regular California credentials; and had directed Roberson to keep the Board informed of progress made toward accomplishing these goals.

27.    From the declaration and deposition testimony given by former Board member

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

10

EXHIBIT A-3

Starbird in 2005, and on December 13, 2006, plaintiff also learned that defendant Roberson, intentionally failed to communicate with plaintiff regarding her need to acquire California Credentials, intentionally failed to take steps to acquire temporary credentials for plaintiff, intentionally failed to inform her employer that she had not carried out the directives she had received regarding plaintiff's credentials and knowingly made false reports to Board members that she was actively engaged in obtaining the required temporary credentials for plaintiff, and that she had "everything under control." From the December 13, 2006 deposition of Cathomas Starbird, plaintiff also learned specific facts regarding "emergency" closed sessions of the Board which establish that  the District and the individual Trustees named as defendants herein, knowing and intentionally plotted to deprive plaintiff of her employment rights by covering-up their own acts of negligence and misconduct in office.

28.     In addition to failing to take action to safeguard plaintiff's employment, defendants District, Roberson, Thornton, Huff, Fraser and Jones engaged in a course of conduct designed and intended to deprive plaintiff of her employment and to retaliate against plaintiff for refusing to support Roberson in her discriminatory, deceptive and illegal conduct in the performance of her duties as Superintendent and designed and intended to cover-up their own negligence and misconduct in office.

29.     From the deposition of Rose Roberson taken in three sessions commencing  on March 24, 2006 and concluding on December 20, 2006, plaintiff also learned facts which establish that the District was negligent in its hiring, training and supervision of Roberson, that the District intentionally misrepresented information regarding its knowledge and responsibility regarding the credentialing of Christina Windsor, that the District intentionally failed to take action to ensure that Roberson fulfilled the District's obligations to plaintiff and that the District had contracted with the Marin County Office of Education to handle credentialing matters but

11

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

1  failed to ensure that the responsibilities it had delegated or attempted to delegate were carried

2  out.

3      30.    The deposition of Terri Fesperman, Credentialing Specialist for the California

4  Commission on Teacher Credentialing, taken on January 8, 2007, provides evidence of the fact

5  that the District's demotion of plaintiff from her position as principal and its termination of

6  plaintiff from her employment in July, 2000 was not supported or required by State law as

7  claimed by the District, and that the District's termination of plaintiff's employment in August,

8  2000 was similarly not supported or required by State law.

9

10                    **FACTUAL BACKGROUND**

11      31.    Christina Windsor, a black, female, single mother of two adopted sons was born,

12  raised, educated and lived in Iowa until she was recruited by the Sausalito School District to

13  serve as principal.  Plaintiff graduated from the University of Northern Iowa with a Bachelor's

14  Degree in Education in 1981, and received her Master's Degree in 1993.  She received both

15  teaching and administrative credentials form the State of Iowa and was employed as a principal

16  by the school district in Waterloo from 1995 until she accepted the position as principal of the

17  defendant school district in 1999.

18      32.    Plaintiff initially refused to consider the District's offer of employment because of

19  her mother's poor health.  When her mother died, however, plaintiff agreed to come to California

20  for an interview.  Plaintiff completed a written application in which she clearly stated that she

21  did not have any California credentials and during her employment interview the District never

22  raised any issue regarding the adequacy of her Iowa credentials, which plaintiff stated she

23  believed entitled her to reciprocity in California.

24      33.    At the conclusion of her interview before the District's Board of Trustees in May,

25  1999, the Board announced that plaintiff had been selected and introduced her at the meeting as

26

27

28

                    12

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

                    **EXHIBIT  A-3**

the new principal. On July 6,1999 plaintiff was asked to sign a written one-year employment

contract (Exhibit C) which included a space in which the credentials she was required to have

was left blank.  The District employed plaintiff as a principal for over a year (having extended

her one year contract in November, 1999 (Exhibit D), without any mention of her credentials. On

or about April 24, 2000, the district reviewed plaintiff's personnel file and discovered that she

not submitted a tuberculosis test.  The District sent plaintiff a memorandum emphasizing the

need to submit the missing test result.

34.    In July, 2000 as a result of a dispute between the District and certain teachers who

had been laid-off in violation of Education Code procedures, the teacher's union conducted an

audit of the District's files.  At that point it was brought to light that plaintiff's file did not

contain California credentials.  On July 13, 2000 the District sent plaintiff a letter demanding that

she produce within 48 hours copies of California credentials the District knew she did not have.

At no time prior to July 13, 2000 did the District or anyone else advise plaintiff, nor did plaintiff

know, that she was required to have California credentials.

35.    On July 17, 2000 plaintiff secured and presented to the Superintendent of the

District, an application for issuance of California credentials that would have allowed plaintiff to

continue working for one year during which she could study for and take the California

credentials examination.  The Superintendent accepted the application but, without explanation,

refused to sign it.  Instead, on July 27, 2000 the District notified plaintiff that she had been

demoted from her position as principal and reassigned as a member of the classified staff.  The

District demanded that plaintiff take the credential examination (for which most applicants study

for six months to a year) in less than a week (on August 5, 2000).

36.    Plaintiff contacted the California Teacher Credentialing Committee which advised

her that the District should have and still could apply for a one year temporary credential for her

13

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

1   which would allow plaintiff to continue working while she studied for the exam.  Plaintiff was

2   told that she could take the exam any time during the next twelve months.  On August 5, plaintiff

3   was ill and notwithstanding her illness would not have been prepared to take the exam.  Plaintiff

4   notified the District that she had registered to take the exam on October 7, 2000.  On August 10,

5   2000 the District notified plaintiff that she was terminated effective immediately for

6   "insubordination" for having failed to take the test on August 5.  Plaintiff requested that she be

7   afforded the protections provided by statute for classified employees, which request was refused.

8

9   37.    Plaintiff submitted the application to the credentialing committee which the

10  Superintendent had failed to sign and submit on plaintiff's behalf.  On October 7, plaintiff took

11  and passed the exam and was issued California credentials.  The District objected to the issuance

12  of temporary credentials to plaintiff on the ground that plaintiff had already been fired when she

13  took the test, and forced the credentialing committee to revoke the credentials issued to plaintiff.

14  Thereafter, the District thwarted plaintiff's attempts to gain employment with other school

15  districts and revoked the license of the Marin City Charter School (virtually all black students)

16  because "the Board of Trustees of the charter school had hired plaintiff as its principal."

17

18

19                          **VIOLATIONS OF LAW**

20

21  38.    Defendant District failed to comply with Education Code Section 45305 which

22  prohibits termination of classified employees without compliance with the provisions of the

23  Education Code.  Defendants District, Roberson, Thornton, Huff, Fraser and Jones, and third

24  parties (including but not limited to Roberson's attorney Margaret Merchat), illegally conspired

25  to deprive plaintiff of her employment and her livelihood in violation of the Fourteenth

26  Amendment to the United States Constitution and California statutes and 42 USC Sec. 1983.

27  Roberson and the District retaliated against plaintiff for her refusal to condone, participate in or

28

14

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT A-3

carry-out racially discriminatory punishment of students by making false assertions that plaintiff was either not competent, qualified or otherwise capable of performing her duties as principal and by taking action to build a case against plaintiff that was intended to result in unwarranted adverse consequences for plaintiff's employment. The District arbitrarily conditioned plaintiff's continued employment on her taking a test under unreasonable circumstances and without any justification for the shortened time.  When plaintiff, for good cause, failed to comply with the District's unreasonable, arbitrary, capricious, unjustified and illegal conditions, the District used her non-compliance as a pretext for terminating her employment. The District, Roberson, Thornton, Huff, Fraser, and Jones subjected plaintiff to harassment, adverse employment action, demotion and discharge on account of Plaintiff's refusal to participate in or condone  the District's long term discrimination against black students, its unethical and dishonest treatment of other District employees whom plaintiff was required to supervise, and on account of the District's and Roberson's scheme to cover-up their own misconduct in failing to secure appropriate temporary credentials for plaintiff.

**FIRST CAUSE OF ACTION**

(Tortious Demotion and Discharge in Violation of the Public Policy Against Racial Discrimination...Against the defendant District)

39.     Plaintiff re-alleges each preceding paragraph of the complaint.

40.     During the period July 5, 1999 thru August 10, 2000, Plaintiff was employed by the defendant District as principal of the Sausalito Marin City School District pursuant to the terms of three-year written contract.

41.     During the period of plaintiff's employment, the District, defendant Roberson and the defendants identified herein as District Trustees engaged in misconduct related to the administration of the Sausalito/Marin City Schools.   On or about April 16, 2000, Roberson gave

15

Law Offices of
Amanda Metcalf
San Rafale, California

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

1  false testimony, under oath regarding school administration matters.  Plaintiff was present when

2  Roberson testified, knew her testimony to be false.

3      42.    From time to time during plaintiff's employment Roberson knowingly gave false

4  and/or intentionally misleading information to teachers and other staff regarding their

5  employment and the administration of the District.  Roberson routinely called upon plaintiff to

6  participate in her deceitful acts by soliciting plaintiff to confirm and/or support her (Roberson's)

7

8  false statements and deceitful acts, which plaintiff failed and refused to do.

9      43.    In late October 1999, Roberson ordered plaintiff to impose extraordinary and

10  excessive discipline on two black, male, second-grade students as a result of complaints from the

11  with mother of a female first grade student related to a school yard prank involving the three

12  children.  Despite the fact that plaintiff had already imposed customary and appropriate

13  discipline (three day suspension), Roberson feared that the white parent (who had demanded that

14  the boys be expelled) would remove her child from school.  On or about October 29, 1999, at

15  approximately 11:00 p.m., Roberson telephoned plaintiff at her home and ordered plaintiff to

16  "find those black boys and suspend them for five days."  Roberson went on to state, "We can't

17  afford to lose this white family…they're equivalent to the Huffs."  Plaintiff refused to impose the

18  additional discriminatory punishment ordered by Roberson.

19

20      44.    In or about October or November, 1999, plaintiff reported Roberson's unlawful

21  conduct (including but not limited to the plan to fire teachers, Roberson's perjury, her racially

22  discriminatory directive to plaintiff, concerns related to questionable financial dealings between

23  Huff and Roberson and other improper conduct and practices ongoing in the District, to Board

24  President, Shirley Thornton and thereby to her employer District.

25      45.    The discriminatory actions Roberson ordered plaintiff to engage in would have

26

27  violated the United States and California Constitutions, as well as federal and state statues which

28

16

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

EXHIBIT  A-3

prohibit discrimination in education.  Roberson's directives that plaintiff participate in and/or remain silent about various deceptive practices engaged in by Roberson and the District regarding personnel and employment would have required plaintiff to become involved in an unlawful scheme to deprive public employees of their employment rights.

46.    As a proximate result of plaintiff's refusal to support or condone Roberson's and the District's illegal and improper policies and practices described herein above, and in violation of the public policy (1) against racial discrimination and (2) against retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency, On July 28, 2000, the District reprimanded plaintiff as being "confrontational and lacking appropriate "communication skills."  These complaints and other negative statements were contained in a letter from Roberson to plaintiff and resulted from Roberson's dissatisfaction with plaintiff because of her opposition to defendants' illegal activities and plaintiff's "whistleblowing."

47.    As a further proximate result of plaintiff's complaints and refusal to support or condone Roberson's and the District's illegal and improper policies and practices described herein above, and in violation of the public policy 1) against racial discrimination and 2) against retaliation against an employee who opposes practices prohibited under state and federal law (racial discrimination) [See: Yanowitz v. Loreal, (2005) 36 Cal.4th 1028], the District demoted plaintiff on July 27, 2000 by reassigning her to a lower position as a member of the classified staff.

48.    On or about July 28, 2000, plaintiff was summoned to a meeting at the District's office to discuss her "continued employment."  At that meeting, plaintiff restated to the trustees who were present, Roberson and Roberson's counsel Margaret Merchat that she objected to and would not participate in Roberson's unlawful and deceitful practices.  As a further proximate

17

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

EXHIBIT  A-3

result of plaintiff's refusal to support or condone Roberson's and the District's illegal and improper policies and practices described herein above, and in violation of the public policy (1) against racial discrimination and (2) against retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency, the District terminated plaintiff's employment on August 10, 2000.

49.     The conduct of the defendant District alleged herein above was the direct and proximate cause of injury to plaintiff in an amount to be proved at trial.

### SECOND CAUSE OF ACTION

(Tortious Demotion and Discharge in Violation of the Public Policy against Retaliation ...

Against the defendant District)

50.     Plaintiff re-alleges each preceding paragraph of this complaint.

51.     Following plaintiff's objection to and refusal to carry out Roberson's illegal directive to impose racially discriminatory punishment on two black students, Roberson began a process of retaliate against plaintiff by making unwarranted  and unjustified complaints about plaintiff's personal habits (including but not limited to how plaintiff spoke, sat, expressed herself and conducted herself in public and in private), soliciting complaints from staff members about plaintiff, making unjustified and unwarranted complaints about plaintiff's work and other engaging in other conduct designed to harass, intimidate, annoy plaintiff and to impugn her reputation.  The District and Roberson's conduct constituted retaliation against an employee who opposed practices prohibited under state and federal law (racial discrimination) [See: Yanowitz v. Loreal, (2005) 36 Cal.4th 1028], and further constituted tortuous adverse employment action in violation of California's public policy against such illegal retaliation.

//

//

18

EXHIBIT  A-3

### THIRD CAUSE OF ACTION

(Violation of Labor Code Section 1102.5...against the District)

52.     Plaintiff re-alleges each preceding paragraph of the complaint.

53.     California Labor Code§ 1102.5 prohibits employer retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency and reflects the broad public policy interest in encouraging workplace "whistleblowers," who may without fear of retaliation report concerns regarding an employer's illegal conduct. This public policy is the modern day equivalent of the long-established duty of the citizenry to bring to public attention the doings of a lawbreaker and evinces a strong public interest in encouraging employee reports of illegal activity in the workplace. *Verduzco* v. *General Dynamics, Convair Div.* (S.D.Cal. 1990) 742 F.Supp. 559, 562.)  California Labor Code§ 1102.5 states:

Employee's right to disclose information to government or law enforcement agency; Employer prohibited from retaliation; Civil penalty; Confidential communications

(a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

19

LAW OFFICES OF
AMANDA METCALF
SAN RAFAELE, CALIFORNIA

EXHIBIT  A-3

1   (f) In addition to other penalties, an employer that is a corporation or limited liability
2   company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for
    each violation of this section.

3   54.   The conduct of the defendant District as alleged herein above, violated Labor

4   Code Section 1102.5 and was the direct and proximate cause of injuries to plaintiff in an amount

5   to be proved at trial.  In addition, plaintiff seeks the maximum civil penalty against the District

6   for each violation of section 1102.5

7

8   **FOURTH CAUSE OF ACTION**

9   (Violation of 42 USC Section 1983...against  defendants District, Roberson
10   Thornton, Huff, Fraser and Jones)

11   55.   Plaintiff re-alleges each preceding paragraph of the complaint.

12   56.   42 U.S.C. § 1983, provides as follows:

13   Every person who under color of any statute, ordinance, regulation, custom, or usage, of
14   any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
     citizen of the United States or other person within the jurisdiction thereof to the
15   deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
     shall be liable to the party injured in an action at law, Suit in equity, or other proper
16   proceeding for redress, except that in any action brought against a judicial officer for an
     act or omission taken in such officer's judicial capacity, injunctive relief shall not be
17   granted unless a declaratory decree was violated or declaratory relief was unavailable.

18   Under Section 1983, local governments and public officials are persons subject to suit for

19   damages, along with individual employees of federal, state and local government who may be

20   sued in their individual capacities for damages, declaratory or injunctive relief for prohibited
21   conduct.

22   57.   As a direct and proximate result of the actions of defendants District, Roberson,

23   Thornton, Huff, Fraser and Jones, and each of them as alleged herein above, which conduct

24   violated 42 USC Section 1983, plaintiff suffered damages including but not limited to loss of

25   employment, and physical, mental and emotional damages in a sum to be proved at trial

26

27   **FIFTH CAUSE OF ACTION**

28   (Intentional Interference with Economic Relations...Against Defendant Roberson)

20

EXHIBIT  A-3

58.    Plaintiff re-alleges each preceding paragraph of the complaint.

59.    At all relevant times mentioned herein, plaintiff had an economic relationship (employment) with the Sausalito School District which included the probability of future economic benefit to plaintiff.  At all times mentioned herein, defendant Rose Marie Roberson had actual knowledge of the existence of the relationship between plaintiff and the District and intentionally engaged in acts, described hereinabove, designed to disrupt that relationship.

60.    On or about August 10, 2000 as a result of the acts of defendant Roberson, plaintiff was discharged from her employment with the District, which termination disrupted the economic relationship between plaintiff and the District.  As a result of the actions of defendant Roberson plaintiff has suffered damages which were proximately caused by the acts of defendant Roberson in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION

(Conspiracy to Interfere with Economic Relations...Against Defendant Roberson)

61.    Plaintiff re-alleges each preceding paragraph of the complaint.

62.    Defendant Roberson, her attorney, Margaret Merchat and others formed an agreement to engage in acts that would result in the destruction of the economic relationship between plaintiff and the District.  In Furtherance of their agreement, conspiracy and common design, defendant Roberson falsely represented to Board Member Starbird and other Board members, that she was taking measures to ensure that plaintiff would receive credentials necessary for her continued employment; intentionally failed and refused to take the steps required to secure plaintiff's credentials, falsely claimed that she did not know about the credentialing issue until July, 2000 and advocated for plaintiff's termination when plaintiff failed to comply with the arbitrary and punitive testing deadline Roberson had prescribed.  In furtherance of their agreement and conspiracy defendant Roberson and Merchat attempted to

21

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

induce Board member Starbird to falsely represent that she had attended and participated in an improperly convened Board meeting held to terminate plaintiff's employment; and otherwise conferred and conspired with each other regarding their plan to deprive plaintiff of her employment.

63.    As a direct and proximate result of the acts of defendant Roberson and her co-conspirator Margaret Merchat alleged herein, plaintiff's economic relationship with the District was damaged and ultimately terminated, thereby causing damage to plaintiff in an amount to be proved at trial.

**SEVENTH CAUSE OF ACTION**

(Intentional Infliction of Emotional Distress...Against Defendants Roberson, Thornton, Huff, Fraser and Jones)

64.    Plaintiff re-alleges each preceding paragraph of the complaint.

65.    The actions engaged in by defendants Roberson, Thornton, Huff, Fraser and Jones described herein above exceeded the course and scope of her authority as Superintendent of the defendant District.  Defendant's acts were, therefore, not privileged or protected and she is personally and individually liable to plaintiff for the consequences of said acts which were intended to and did cause plaintiff to suffer serious, severe and extreme emotional distress or were engaged in with reckless disregard and complete indifference for plaintiff's rights.  As a direct and proximate result of the actions of defendant Roberson plaintiff suffered extreme emotional, physical and mental distress, all to her damage in an amount to be proved at trial.

**EIGHTH CAUSE OF ACTION**

(Negligence...Against Defendants District and the County of Marin)

66.    Plaintiff re-alleges each preceding paragraph of the complaint.

67.    On or about June 4, 2006, plaintiff learned that at the time of plaintiff's

22

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

1  employment with the District, there existed a contract between the Marin City/Sausalito School

2  District and the Marin County Office of Education (MCOE) whereby MCOE assumed

3  responsibility for securing temporary credentials for new, out-of-state employees such as

4  plaintiff.  Plaintiff is informed and believes, and thereon alleges, that MCOE was informed by

5  the District of plaintiff's hire and the necessity of securing temporary credentials for plaintiff.

6  MCOE and the District each owed a duty to plaintiff to secure temporary credentials for plaintiff

7  but failed to do so at any time during the course of plaintiff's employment. MCOE failed to

8  perform its obligation to plaintiff and the District failed to require MCOE to perform the duty it

9  owed to plaintiff as a person for whose benefit the above-referenced contract was created. The

10  above-referenced breach of duty on the part of the District and on the part of MCOE Office was

11  the direct and proximate cause of damage to plaintiff in an amount to be proved at trial.

**NINTH CAUSE OF ACTION**

(Fraud and Deceit...against defendants District, Roberson, Thornton, Huff, Fraser and Jones)

16  68.    Plaintiff re-alleges each preceding paragraph of the complaint.

17  69.    The acts of the District and of defendants Roberson, Thornton, Huff, Fraser and

18  Jones described herein above constituted the perpetration of the intentional torts of fraud and

19  deceit.  Each said defendant knew that Roberson had intentionally failed and refused to make

20  application to secure the temporary credentials which the District was required to obtain for

21  plaintiff.  Each said defendant knowingly, willingly and intentionally acted to conceal

22  Roberson's misconduct, the District's potential liability for fines and penalties arising from the

23  improper payment of public funds and the District's/Board's failure to take action to correct and

24  remedy its own errors. The District and each said defendant concocted a scheme whereby its

25  errors and omissions would be falsely represented as plaintiff's error and omission and

26  defendants would be allowed to escape accepting responsibility for their actions by demoting and

23

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

EXHIBIT  A-3

discharging plaintiff who was blameless. Defendants perpetrated a fraud on plaintiff by wrongfully depriving plaintiff of her employment, her employment contract, and the income upon which she relied to support herself and her family. Defendants' conduct also perpetrated a fraud upon the public by the knowingly, willfully and intentionally using their elected offices and abusing the public trust for the sake of protecting their own personal interests. The conduct of defendants and each of them alleged herein was the direct and proximate cause of injury to plaintiff who sustained damages in an amount to be proved at trial.

## TENTH CAUSE OF ACTION

(Conspiracy to Defraud...against defendants....
District, Roberson, Thornton, Huff, Fraser and Jones)

70.    Plaintiff re-alleges each preceding paragraph of the complaint.

71.    The conduct of defendants and each of them alleged hereinabove constituted the making of a scheme or conspiracy to defraud plaintiff of the benefits of her employment and her employment contract and to deprive the members of the public who defendants took an oath to represent of defendants faithful and good faith performance of their duties. Defendants and each of them, after agreeing to defraud plaintiff and the public as described hereinabove, engaged in specific acts (including, but not limited to, the demotion of plaintiff from her position of principal, the making of false charges against plaintiff regarding her conduct and performance in her duties, withdrawing privileges and perquisites previously given to plaintiff, and making arbitrary, capricious and unreasonable demands on plaintiff regarding taking the credential exam) in furtherance of their conspiracy. As a direct and proximate result of the acts engaged in by defendants and each of them, plaintiff was injured and suffered damages in an amount to be proved at trial.

## ELEVENTH CAUSE OF ACTION

(Unfair Competition...Against the District and Roberson)

24

LAW OFFICES OF
AMANDA METCALF
SAN RAFAEL, CALIFORNIA

EXHIBIT  A-3

72.     Plaintiff re-alleges each preceding paragraph of the complaint.

73.     The acts of defendant Roberson described herein above were approved, ratified and condoned by the District and are, therefore, attributable to defendant District.  Said acts and the separate acts engaged in by the District in an effort to cover-up its neglect of duty and to defraud plaintiff by making her a scapegoat for the District and Roberson's misconduct constitute unfair business practices which violation Business and Professions Code Section 17200, et seq. Said fraudulent conduct was unfair to plaintiff and to the District's competitors (other public school districts and private educational institutions) who must compete fairly and honestly for the services of teachers and education administrators.  The fraudulent conduct complained of caused injury to plaintiff and to members of the public and warrants imposition of the penalties and remedies provided for by California's Unfair Competition statutes.

**TWELFTH CAUSE OF ACTION**

(Breach of Contract....against the defendant District)

74.     Plaintiff re-alleges each preceding paragraph of the complaint.

75.     There existed between plaintiff and the District a written employment contract (Exhibit C) that contained an implied in law covenant of good faith and fair dealing.  Pursuant to that contract the District was required to perform all acts reasonably required to be performed by it in order to effectuate the agreement between the District and plaintiff including, but not limited to, making application to the California Commission on Teacher Credentialing for issuance of temporary credentials to plaintiff. This obligation on the part of the District is necessarily implied in the contract because plaintiff could not otherwise have legally commenced performance of her duties as principal under the contract.  Based on her date of hire, plaintiff could not (nor did the parties contemplate that plaintiff would) prepare for, take and pass the California credential examination, and be issued full credentials prior to the commencement of

25

Law Offices of
AMANDA METCALF
San Rafale, California

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

her duties as principal. The only way in which plaintiff could legally commence employment under California statutory law and under the contract, was if the District applied for a One Year Nonrenewable Credential for plaintiff.

76.    On or about August 1, 1999, the District breached plaintiff's employment contract by failing to make timely application for One Year Nonrenewable Credentials for plaintiff so that she could legally commence her duties as principal/teacher pursuant to her contract. Thereafter, the District continued to violate plaintiff's employment contract by failing and refusing to apply for One Year Nonrenewable Credentials for plaintiff and by conspiring to deprive plaintiff of the benefits of her employment contract rather than perform its obligation to secure appropriate temporary credentials for plaintiff. As a result of the District's breach of plaintiff's employment contract plaintiff suffered damages in an amount to be proved at trial.

### THIRTEENTH CAUSE OF ACTION

(Breach of Contract... against defendant Marin County Office of Education)

77.    Plaintiff re-alleges each preceding paragraph of the complaint.

78.    Defendant Marin County Office of Education breached the contract alleged herinabove of which plaintiff was an intended beneficiary. As a result of said defendant's breach plaintiff suffered damages in an amount to be proved at trial.

### FOURTEENTH CAUSE OF ACTION

(Negligent Hiring, Training and Supervision of Employee....against defendant District)

79.    Plaintiff re-alleges each preceding paragraph of the complaint.

80.    The District was responsible for hiring, training and supervising the person entrusted with the responsibilities of serving as Superintendent of the District. The District failed to use reasonable care and failed to act in a reasonably prudent manner in the hiring, training and supervision of Superintendent Roberson. Specifically, the District failed (by failing

26

Law Offices of
AMANDA METCALF
San Rafale, California

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT A-3

to act in a reasonably prudent manner in hiring and/or training Roberson) to ensure that Roberson was qualified and capable of performing the duties of Superintendent and was aware of her responsibility to ensure that employees of the District who were required to hold credentials, actually held, secured or were issued those credentials. Further, the District failed to exercise reasonable supervision and control over Roberson after entrusting the aforementioned responsibilities to her.  Specifically, the District failed to take reasonable and prudent measures to ensure that Roberson complied with specific directives that make application to the California Commission on Teacher Credentialing for the issuance of One Year Nonrenewable credentials to plaintiff. As a direct and proximate result of the Districts neglect of its responsibilities alleged hereinabove, plaintiff was injured and suffered damages in an amount to be proved at trial.

## PUNITIVE DAMAGES

81.    The conduct of defendants Roberson, Thornton, Huff, Fraser and Jones, as alleged in the FIRST, SECOND, FOURTH, FIFTH, SIXTH, SEVENTH, NINTH, and TENTH, CAUSES OF ACTION, constitutes fraud, deceit and oppression in that the acts were despicable,  engaged in without regard for the health, safety and welfare of plaintiff, in conscious disregard for plaintiff's rights and with intent to cause injury to plaintiff.  Defendants' conduct subjected plaintiff to cruel and unjust hardships including the loss of her only source of income, eviction from her home in California, the loss of her family's home in Iowa and multiple other severe hardships, humiliations, embarrassments, and physical, mental and emotional injuries. The conduct engaged in by defendants also constituted malice in that said conduct was intended by defendant to cause injury to the plaintiff, and was despicable conduct which was engaged in by defendant in willful and conscious disregard for the rights, safety and welfare of plaintiff and her family. Such conduct warrants the imposition of punitive or exemplary damages against each defendant.

27

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3

WHERFORE, plaintiff prays judgment against defendants and each of them as follows:

1.      For general and special damages according to proof,

2.      For punitive damages in an amount appropriate to punish each non-public defendant and deter others from engaging in similar conduct,

3.      For penalties provided for by statute,

4.      For reasonable attorneys fees pursuant to statute,

5.      For costs of suit, and,

6.      For such other and further relief as the court deems appropriate.

Dated:  January 25, 2007                        LAW OFFICES OF AMANDA METCALF


                                                *Amanda Metcalf*
                                                _____
                                                Amanda Metcalf
                                                Attorneys for Plaintiff, Christina Windsor

LAW OFFICES OF
AMANDA METCALF
SAN RAFALE, CALIFORNIA

Windsor v. Sausalito, Marin Sup. Ct. CV 012272
Second Amended Complaint

EXHIBIT  A-3